210 So.2d 534 (1968)
Joseph J. CANGIAMILLA
v.
BRINDELL-BRUNO, INC., George W. Locke, Maryland Casualty Company and the City of New Orleans.
No. 3075.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1968.
Rehearings Denied June 10, 1968.
*535 John A. Salvaggio, of Garvey, Salvaggio & Prendergast, New Orleans, for Joseph J. Cangiamilla, plaintiff-appellee.
Alvin J. Liska, City Atty., Samuel Richard Exnicios, Asst. City Atty., for the City of New Orleans, defendant-appellant.
Francis G. Weller, of Deutsch, Kerrigan & Stiles, New Orleans, for George W. Locke, Brindell-Bruno, Inc., and Maryland Casualty Company, defendants-appellants.
Before REGAN, CHASEZ and HALL, JJ.
CHASEZ, Judge.
This is an action in tort to recover personal injuries received when the car driven by plaintiff, Joseph Cangiamilla, collided with a pickup truck driven by George Locke, an employee of Brindell-Bruno, Inc., insured by Maryland Casualty Company. Also named as a defendant in this suit was The City of New Orleans which is allegedly responsible for failure to replace a Stop sign which would have controlled George Locke's entrance into this intersection. After a trial on the merits the lower court awarded a judgment of $25,018.57 in favor of plaintiff Joseph Cangiamilla and against the defendants Brindell-Bruno, Inc., George W. Locke, Maryland Casualty Company and The City of New Orleans. It was further decreed that a judgment be rendered in favor of Brindell-Bruno, Inc., Maryland Casualty Company against thirdparty defendant, The City of New Orleans, for a sum of one-half the amount for which they have been cast in judgment. Likewise, The City of New Orleans was granted a judgment as a third-party plaintiff against Brindell-Bruno, Inc. and Maryland Casualty Company for one-half the amount for which it was cast in judgment. From this judgment each defendant cast has appealed suspensively.
The facts preceding the collision are essentially undisputed. Mr. Cangiamilla was driving up Bruxelles Street, a one-way street in the lakebound direction at an estimated fifteen to eighteen miles per hour. He was familiar with Bruxelles Street and knowing that normally his right of way was protected by Stop signs on all intersecting streets, he assumed that he could safely proceed at a speed slightly less than the twenty miles per hour limit. When Mr. Cangiamilla approached the Treasure Street intersection, he testified that he looked to the left and subsequently to the right, just before the moment of his collision with Mr. Locke.
Mr. Locke was driving from a supply house to a plumbing job in Kenner in the course of his employment with Brindell-Bruno. Although he had been in the area before, he was not familiar with the particular route he was taking on the day of the accident. He testified that as he approached the intersection of Bruxelles from an easterly direction on Treasure Street, he was traveling at an estimated fifteen to twenty miles per hour. He further testified that he saw the one-way sign on Bruxelles but saw no Stop sign controlling his approach to the intersection. He stated that he looked to the left, and seeing nothing to cause him to reduce his speed, he proceeded through the intersection. The testimony leaves some doubt whether his view was blocked or whether he simply looked and saw no car on Bruxelles, but the important fact about which there is no doubt remains; that is, when he actually entered the intersection, he had seen no cars and he looked straight ahead without appreciably decreasing his speed.
The physical aspects of the collision indicate that the Cangiamilla automobile had reached at least the center of the intersection when the right front of his vehicle was struck by the left front of Mr. Locke's pickup truck. The force of impact pushed the *536 Cangiamilla automobile across the intersection and into a vacant lot adjacent to it. Although Mr. Locke's truck was heavily damaged on the left side, he suffered no injuries. Mr. Cangiamilla received substantial injuries which are well documented by the evidence. He incurred a sub-dural hematoma which may be defined as a liquid clot located under the membrane which covers the brain. This clot was relieved by surgery which required two burr holes to be drilled through the bony structure of his skull. Mr. Cangiamilla has essentially recovered from this delicate surgery but he still complains of some loss of memory and occasional discomfort. Dr. Culicchia, the physician who performed the surgery, testified that Mr. Cangiamilla could develop convulsions as a late complication to this injury, but no further evidence of this possibility has been introduced. Suffice it to say that the injuries accounted for in the original judgment are definitely substantiated by the record.
The City of New Orleans' responsibility towards the plaintiff concerns the maintenance of a Stop sign on Treasure Street. Although Treasure Street is normally controlled by Stop signs at its intersection with Bruxelles in both the East and West approaches, there was no Stop sign on Mr. Locke's western approach. The evidence reveals that the Stop sign that would have controlled this approach was knocked down on January 10, 1965 and was not reported replaced until almost two weeks after Mr. Cangiamilla's accident on March 11, 1965. Testimony of the police officer who investigated the incident which originally caused the sign to be knocked down reveals that this fact was relayed to the dispatcher who was to forward that information to the Department of Traffic Engineering. The officer also stated that he reported this again when he noticed the sign had not been replaced some time after the original incident. Although the Department of Traffic Engineering normally takes prompt action on damaged Stop signs, their records do not show that any report was received stating that the Stop sign in question was knocked down. The Police Department, an agency of the City of New Orleans, did have knowledge of this hazard, however, and according to the investigating officer, attempted to relay this information to the proper municipal agency.
Liability was assessed by the trial court and judgment was rendered against the appellants as herein stated. The theory of liability relied upon by the trial court embraces the doctrine of preemption as controlling Mr. Locke's negligence and knowledge of a hazardous street condition as a basis for the City's negligence. Since this suit is largely one of fact and the record abundantly shows that there is no manifest error in the trial court's analysis of the evidence, then the only question which remains on appeal concerns the proper conclusion of negligence in light of these or other theories of liability.
There is no question that the judgment assigning negligence to Mr. Locke is correct. We are referred to the case of Fontenot v. Hudak, 153 So.2d 120 (La.App., 3rd Cir.1965), which dealt with an almost identical fact situation. In that case the appellate court declined to adopt the preemption doctrine, because the two automobiles had entered the intersection at approximately the same time. We find that such is the case in the present controversy. Both automobiles were traveling from fifteen to twenty miles per hour and they collided at a point just beyond the center of the intersection. Neither driver saw the other until just before the moment of collision. Finding the testimony and other evidence to be correct as certainly did the trial judge, we find that it logically follows that the automobiles must have entered the intersection at approximately the same time.
Had the Stop sign been in place on the day of the accident, there is no question that the proximate cause would be attributed solely to Locke's negligence in failing to concede the right-of-way to the vehicle traveling on Bruxelles. His lack of familiarity *537 with the intersection indicates that Mr. Locke did not know that normally vehicles on Treasure Street are required to stop before crossing Bruxelles. Therefore, for all intents and purposes Mr. Locke should have considered the intersection uncontrolled since no Stop sign was present to warn him.
As in Fontenot v. Hudak, supra, we find Mr. Locke negligent in failing to maintain a proper lookout. Regardless of whether he knew or should have known of the Stop sign, he entered the intersection with no apparent right-of-way and collided with a vehicle that normally would have had right-of-way if the proper controls had been in place.
Mr. Cangiamilla is exonerated of any contributory negligence for he travelled with the apparent right of way, and there is no evidence to support any allegation that he failed in his duty to keep a proper lookout. The record offers abundant support to the conclusion that he should be relieved of any liability in this situation. Moreover there is no proof that he could have avoided or prevented the accident. See Veith v. Travelers Insurance Company, 204 So.2d 671 (La.App., 4th Cir. 1967) and authorities cited therein.
Turning now to the liability attributed to the City of New Orleans, we must analyze the allegation of contributory negligence. The City urges that no negligence can be implied when in the lawful exercise of its police power, the City or its agents declines to erect specific traffic controls or even re-establish one that has been accidentally knocked down. It is further argued that the judiciary cannot superimpose its authority on the City's police power to establish traffic controls. With this assertion we agree, but we do not think the City chose to leave the intersection uncontrolled as it may lawfully do within its police power.
What the City or its agent the Traffic Control Department has done is assumed the duty of maintaining the signs at Treasure and Bruxelles Streets and has failed to carry out this task. As testified to by the City Engineer an unusual hazard would be created by a Stop sign on one approach of Treasure Street and none on the other. Certainly the underlying factor to this collision involves Mr. Cangiamilla's reliance on the protection the Stop sign would have given him; and likewise it would have warned Mr. Locke on Treasure Street.
Another factor in our decision to affirm the trial court's finding of negligence, concerns the usual high priority given to the replacement of Stop signs that have been knocked down. The City Engineer testified that normally a Stop sign will be replaced within one eight hour day from the time the traffic department receives notice. The records kept by that department also indicate that the City intended the Treasure-Bruxelles Street intersection to be controlled by Stop signs on both Treasure Street approaches, and the hazard created by allowing one to stand would normally have been corrected immediately. Thus, although it is within the City's police power to originally install traffic controls, all the evidence in this case indicates that the decision to maintain traffic controls had been made and this maintenance was to be continued on the day of the accident. The negligence then attributable to the City is its failure to maintain the street sign thus creating an unusual hazard. Since it assumed the duty of controlling this intersection, its negligence lies in its failure to complete this duty once assumed.
There is no question that the City was correctly cast in judgment by the lower court. Not only is its negligence in allowing the Stop sign to remain down for approximately forty-seven days self-evident, but there was notice of this unusual hazard forwarded to the City authorities on two different occasions prior to the accident by New Orleans Police Officers. Furthermore, no plea of sovereign immunity may be heard, since Mr. Cangiamilla obtained authority from the Louisiana Legislature to *538 bring this suit against the City of New Orleans. Act No. 337 of 1966 Regular Session of the Louisiana Legislature.
The record reveals that the injuries sustained by plaintiff were severe. In his reasons for judgment the District Judge stated:
"Mr. Cangiamilla suffered a subdural hematoma for which he underwent head surgery. He is left with two holes in the bony structure of his skull about the size of a coin larger than a `nickel and smaller than a quarter'. One of these openings is readily noticeable on the front portion of his head appearing as a concave identation approximately the size above described. The bone will never rebuild itself but the space will to some degree be filled with scar tissue.
"Mr. Cangiamilla has essentially recovered from surgery but he complains of loss of memory and some occasional discomfort. Dr. Cullichia testified that there is a danger of epilepsy developing after a subdural hematoma.
"The loss of memory may have existed to a limited degree on a temporary basis; however, the Court is not impressed with any contention that such is of a permanent character.
"It is the belief of this Court that Mr. Cangiamilla had and still has great apprehension of his condition and of the projected possibilities of a residual character which give rise to damages for mental anguish, which are great in a case involving injuries of this type.
"An award of $22,000.00, for past, present and future pain, suffering and mental anguish should be allowed in this case, plus special damages and costs."
The District Court rendered judgment in favor of plaintiff, Joseph J. Cangiamilla, and against the defendants Brindell-Bruno, Inc., George W. Locke, Maryland Casualty Company and the City of New Orleans, jointly and in solido, in the full sum of Twenty-Five Thousand, Eighteen and 57/100 ($25,018.57) Dollars. It will be noted that in its reasons for judgment the Court stated that Twenty-Two Thousand and 00/100 ($22,000.00) Dollars was awarded plaintiff for pain, suffering and mental anguish. However while the District Court failed to itemize the special damages awarded to plaintiff, the evidence in the record and the stipulations of counsel indicate the correctness of its award.
We are in agreement with the findings of fact and conclusions of the Court a qua and therefore its judgment in all respects is affirmed. All costs of appeal shall be paid by defendants-appellants.
Affirmed.