363 So.2d 1316 (1978)
Diana ADAMSKI
v.
John N. BURDELL and the American Road Insurance Co.
No. 9403.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
*1317 Philip S. Brooks, City Atty., Anita Connick, Asst. City Atty., for defendant-appellant, City of New Orleans.
Schafer & Schafer, Timothy G. Schafer, New Orleans, for defendant-appellee United Services Auto. Assn.
Klein & Rouse, Henry L. Klein, New Orleans, for plaintiff-appellee Diana Adamski.
Before GULOTTA, STOULIG and GARRISON, JJ.
GARRISON, Judge.
This lawsuit arose out of a two-car collision between a vehicle driven by plaintiff, Diana Adamski, and owned by Delbert Hale, and a vehicle driven by defendant John Burdell. The accident occurred between 5:30 and 6:00 p. m., April 5, 1975, on Barracks Street near its intersection with North Peters Street in New Orleans.
Barracks is a one-way street, beginning at North Peters and heading in the direction of the lake. Plaintiff Adamski was proceeding along North Peters toward Esplanade and turned left onto Barracks when she was struck by Burdell's vehicle, which was traveling the wrong way on Barracks. Burdell denied any negligence, on the ground that Barracks Street was not properly marked as a one-way street at that point.
Neither vehicle suffered serious damage, but Ms. Adamski claimed severe whiplash injuries, which had not cleared up by the time of trial (two full years after the accident) and which may have resulted in a degenerative disc requiring surgery.
Plaintiff Adamski originally sued both Burdell and American Road Insurance Company as his insurer. When it was determined that Burdell was an uninsured motorist, United Services Automobile Association, the uninsured motorist carrier for Delbert Hale's automobile, was added as defendant. In a subsequent amended petition the City of New Orleans was named as a defendant for failure to sign Barracks Street properly as a one-way street in that area. The City of New Orleans then third-partied U.S.A.A. for indemnification or, alternatively, contribution in the event that it was found liable.
After a trial on the merits, the court below found that where Mr. Burdell entered Barracks Street, at French Market Place, there was no sign indicating that Barracks was a one-way street, and under the circumstances there was no way that he could have been aware that he should not turn right onto Barracks Street and proceed toward the river. Conversely, Ms. Adamski was familiar with the area and knew that Barracks Street was one-way, so she had no reason to believe that she would encounter a vehicle coming out of Barracks Street the wrong way. As a result, the trial court held that both Adamski and Burdell were exercising reasonable care, and that neither one was guilty of negligence causing the accident. The judge concluded that the failure of the City of New Orleans to sign *1318 Barracks Street properly so as to designate it as a one-way street was the proximate cause of the accident. Accordingly, judgment was rendered in favor of the plaintiff against the City of New Orleans, in the amount of $25,000 general damages, $4,000 loss of income, and $808.49 in medical expenses. All other claims were dismissed.
This appeal was lodged by the City of New Orleans alone, urging that the trial court erred in concluding that the City breached its duty to erect a one-way street sign at the intersection of Barracks Street and French Market Place. The City further argues that even assuming that it breached a duty, that duty was not such that its breach would render the City liable in damages. In addition, the City appeals the trial judge's award of damages on the ground that it was excessive and an abuse of his discretion.
Other than the extent of the injuries claimed by plaintiff, the facts in this case are not really in dispute. There was some disagreement as to the precise point of impact: whether Adamski was making or had completed her turn when the accident occurred. If the turn had been completed, then conceivably either driver could have had time to avoid the accident. However, the trial judge found, and there is more than sufficient evidence in the record to support his conclusion, that the accident occurred before Adamski had completed her turn. Therefore, neither driver was found negligent in that respect and, in the absence of manifest error, that finding will be sustained. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The legal questions presented are more perplexing. Was defendant Burdell guilty of negligence for travelling the wrong way on a one-way street, even though he could not reasonably have known of the one-way designation due to the absence of a sign at the intersection of Barracks and French Market Place? Should the rule that "ignorance of the law is no defense" be applicable here? Under the circumstances, was the City of New Orleans negligent for failing to erect a one-way sign at the crucial intersection here, or was the placement of a one-way sign there purely discretionary? Even if the City was negligent in performance of its duty, was there a duty owed directly to these individuals, or to the public in general?
The evidence established that the Burdells were in the area to shop at the Flea Market. They had driven down North Peters toward Esplanade until they reached Barracks Street and turned left. There were no signs at this intersection that would have indicated that Barracks was a one-way street. They made another left turn at the first opportunity, at French Market Place. There were no one-way signs at this intersection to indicate that either Barracks or French Market Place was a one-way street. They did not go more than a car-length or two on French Market Place before finding a perpendicular parking place on the lake side of French Market Place.
When the Burdells finished shopping, they returned to their car, backed out of their parking place onto French Market Place, heading back toward Barracks. When they reached the intersection they discussed which way to turn. There were no signs indicating Barracks as a one-way street, so they decided to turn right, partially due to the presence of a "no through traffic" sign on the corner of French Market Place and Barracks Street, which indicated to the Burdells that they should not proceed further toward the lake on Barracks Street.
The City argued at trial that because Barracks was one-way beginning at North Peters and French Market Place was one-way beginning at Barracks, no one-way signs were necessary at those intersections. According to City policy, it is purely discretionary to erect one-way signs at the beginning of a one-way street because at that point drivers do not have the choice of proceeding in the opposite direction. Mr. Eugene Trayhan, Traffic Engineer for the City of New Orleans, testified that only about one-half the one-way streets are signed at their beginnings.
*1319 Each of the two streets in question, Barracks and French Market Place, is designated as one-way, and signed as such, at its first intersection where drivers would have a choice. Because no traffic should be proceeding on French Market Place toward Barracks, it was argued that no one-way sign was required at that point. This argument, however, overlooks the possibility and great likelihood of a driver unfamiliar with the area doing precisely what the Burdells did. If one parks in the first block of French Market Place, where parking is provided, one has had no opportunity to discover that either French Market Place or Barracks Street is a one-way street.
At this point, it is also important to note that French Market Place is not listed as a one-way street in the New Orleans City Code. See New Orleans City Code, 1956, § 38-277. Even if it is properly signed as such further down the street, the failure to designate it as such in the City Code section in which all one-way streets in the City are listed appears to be a gross oversight, and it further highlights the need for a one-way sign at the intersection of Barracks and French Market Place.
The City argues additionally that Mr. Burdell was negligent for failing to determine in which direction the traffic flowed. It is true that motorists have the duty to determine that it is safe to proceed before doing so, but it is undisputed that Burdell stopped and debated which way to turn. No other traffic which would give an indication of the proper direction was passing at the time. As the trial judge found, Mr. Burdell was not negligent in the manner in which he proceeded.
Further, John Burdell was not guilty of violation of the City Code (§ 37-277) for proceeding the wrong way on a one-way street. The City argues the rule that ignorance of the law is no defense, which would impute Knowledge of all the City's one-way streets listed in § 38-277 upon motorists, regardless of the presence of one-way signs. This might be true if it were not for the specific language found in §§ 38-93(a) and 38-94 of the City Code, which read as follows:
"(a) Whenever any law of the city designates any one-way street or alley, the City Traffic Engineer shall place and maintain signs giving notice thereof, and no such regulations shall be effective unless such signs are in place. Signs indicating the direction of lawful traffic movements shall be placed at every intersection where movement of traffic in the opposite direction is prohibited." (Emphasis added.) New Orleans City Code, 1956, § 38-93 (as amended 6-6-68).
"Upon those streets and parts of streets and in those alleys described in Schedule I, Section 38-277 contained in this chapter and made a part thereof, vehicular traffic shall move only in the indicated direction when signs indicating the direction of traffic movement are erected and maintained at every intersection where movement in the opposite direction is prohibited." (Emphasis added.)
The above ordinances specifically require notice, by means of one-way signs, to motorists, before any violation can occur.
It is the same ordinance cited above, § 38-93(a), which requires that liability be imposed upon the City of New Orleans. The City states that the placing of signs is a discretionary function of the City, not a duty for which the City may be held liable in the event of an accident which may have been prevented by the proper placement of a sign. This is correct as a general proposition. This general discretion is clearly set out in § 38-38 of the City Code,[1] and it has been reiterated in numerous cases in the courts. See Cangiamilla v. Brindell-Bruno, 210 So.2d 534 (La.App. 4th Cir. 1968); Pickering *1320 v. Washington, 260 So.2d 340 (La.App. 1st Cir. 1972), writs refused May 25, 1972.
However, in the case of one-way-street signs, the broad discretion given the Traffic Engineer in § 38-38 is countermanded by the specific and mandatory language found in § 38-93(a): "[T]he City Traffic Engineer shall place and maintain signs . . . ." (Emphasis added.) This mandatory language places an affirmative duty on the City much more onerous than the purely discretionary language of § 38-38 which is generally applicable.
This conclusion makes sense for application to the erection of one-way-street signs, as it is easily analogous to the general duty with respect to the erection and maintenance of street signs. As was pointed out in Cangiamilla v. Brindell-Bruno, supra, at 537:
"The City urges that no negligence can be implied when in the lawful exercise of its police power, the City or its agents declines to erect specific traffic controls or even re-establish one that has been accidentally knocked down. It is further argued that the judiciary cannot superimpose its authority on the City's police power to establish traffic controls. With this assertion we agree, but we do not think the City chose to leave the intersection uncontrolled as it may lawfully do within its police power."
The City has no duty to erect signs or other traffic controls, but once it has undertaken such a duty and erected a traffic control, it has assumed the duty to maintain such control and may be held liable for its failure to do so.
In this case the City has chosen to designate Barracks Street as a one-way street, but has failed to adequately sign it at its intersection with French Market Place, so as to notify the public. The City had no duty to designate Barracks or any other street as a one-way street, but once so designated, the City has an affirmative duty to properly maintain it as one. Once this analogy is used and this duty is established, the principles of municipal liability espoused in Dufrene v. Guarino, 343 So.2d 1097 (La.App. 4th Cir. 1977),[2] are not applicable.
With regard to whether U.S.A.A., the uninsured motorist carrier, should be held liable, the above conclusions of fact and law make it clear that it should not be. An uninsured motorist carrier cannot be held liable unless the uninsured motorist in question was, in fact, at fault, through negligence or otherwise. Since it has been determined that defendant Burdell was not negligent in the manner in which he was proceeding on Barracks Street as a matter of fact, and was not guilty of violation of a City ordinance as a matter of law, U.S.A.A. cannot be held liable to plaintiff Adamski.
The plaintiff has not appealed from the dismissal of defendants Burdell and U.S.A.A. by the trial court. Thus, because that judgment cannot be disturbed by this appeal, the only question presented is whether U.S.A.A. might be liable to the City of New Orleans for contribution. Under the law applicable to uninsured motorists, even if Burdell was found negligent in addition to the City, such a result is impossible.
As is well-supported in the brief filed by appellee U.S.A.A., an uninsured motorist carrier cannot be held liable to co-defendant tortfeasors for contribution. This principle, and the relationship between an uninsured motorist carrier, the insured, and the uninsured motorist, was first defined by our Supreme Court in Booth v. Fireman's Fund Insurance Co., 253 La. 521, 218 So.2d 580 (1968). Following Booth, the *1321 Fourth Circuit found in 1977 that the uninsured motorist carrier is not the insurer of the uninsured motorist, and therefore cannot be liable for contribution to joint tortfeasors.
"The liability of an uninsured motorist carrier is based solely on the contract of insurance between the carrier and its insured, and the insured is the only party possessing the right to make a claim under his uninsured motorist provision. To hold otherwise would have the effect of converting the uninsured motorist provision into liability insurance covering the uninsured motorist. . . .
"Here, since the original plaintiff is the only party who may seek benefits from Hartford under the uninsured motorist coverage of his policy, Hartford is not obliged to contribute to plaintiff along with third party tort feasors, one or more of whom may be uninsured motorists. This result is dictated by LSA-R.S. 22:1406 D(4), which gives a carrier the right to recover payments made under the uninsured motorist provisions of its policy from the proceeds of any judgment `resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.' If, as argued by third party plaintiffs, Hartford could be held for contribution among the third party defendants to satisfy a judgment in favor of the original plaintiff, Hartford would have a right to be reimbursed from the proceeds of that very judgment to the extent of the amount of its contribution." Youngs v. Champagne, 348 So.2d 126, 127-128 (La.App. 4th Cir. 1977), writ refused Oct. 26, 1977.
Thus, it seems clear that since the determination of John Burdell's freedom from fault has not been appealed by plaintiff, and particularly if the City of New Orleans is found liable, U.S.A.A.'s liability is no longer at issue in any way.
Turning to the question of quantum raised by the City on appeal, it is submitted that the amounts awarded by the trial judge were supported by the evidence. Although the award of $25,000 in general damages might be considered to be on the high end of the scale, it is not outside the limits of the trial judge's great discretion. C.C. 1934(3).
Likewise, the award of $4,000 for lost wages and loss of earning capacity, in addition to the $808.49 for medical expenses, is not excessive. Plaintiff produced sufficient evidence of her income both before and after the accident to support an award for this loss.
The judgment in favor of plaintiff, Diana Adamski, and against defendant, the City of New Orleans, is affirmed.
AFFIRMED.
NOTES
[1] That section reads as follows:

"The City Traffic Engineer shall place and maintain traffic-control signs, signals and devices when and as required under the traffic laws of the city to make effective the provisions of said laws, and may place and maintain such additional traffic-control devices as he may deem necessary to regulate traffic under the traffic laws of the city or under state law, or to guide or warn traffic." (Emphasis added). New Orleans City Code, 1956, § 38-38 (as amended 6-6-68).
[2] In that case, it was held that the City was not liable for injuries sustained in a fire as a result of a negligent fire inspection by the City. The reasoning was the fire inspections were part of a duty to the public in general, not to any given individual. Although the erection of one-way-street signs might be considered a duty to the public in general, rather than to the individuals involved here, the Court of Appeal also stated that the City had no duty in that case to protect citizens from the negligence of others. When it is remembered that there was no negligence on the part of anyone else here, only the negligence of the City, the cases can be distinguished.