PER CURIAM.
Plaintiff, Robert Williams, has appealed from a judgment denying him recovery *38 against the City of New Orleans for personal injuries sustained when he was hit by a car.
In January 1984, an intersectional collision occurred at Andry and North Villere Streets in a residential neighborhood of New Orleans. Lawrence Peterson was driving on Andry and Cassandra Mahogany was driving on N. Villere. Both streets were of equal dignity with no signs or signals at the intersection to control traffic.
As a result of the collision Mahogany lost control of her vehicle, it collided with an automobile which was parked near the intersection, and this caused plaintiff, Robert Williams, who was standing at the rear of the parked vehicle, to sustain serious personal injuries.
Plaintiff brought suit against Peterson, Mahogany, and their liability insurers. He also named as a defendant, the City of New Orleans, alleging that it was negligent in failing to erect traffic control devices at the intersection. He settled his claims against Peterson, Mahogany and their insurers pri- or to trial, and proceeded with his claim against the City. The trial court dismissed his suit.
On appeal, plaintiff asserts that the City was liable because it failed to erect traffic controls despite notice that there was a history of many accidents at the intersection.
Eugene Brooks who resided in the vicinity of the intersection testified that he twice contacted the City Department of Streets to complain of the number of serious accidents that occurred there and to request that a stop sign be erected. Getting no satisfaction he contacted Councilman Wayne Babovich, who represented that district. Babovich testified that he had gotten complaints about the intersection from Brooks and from civic groups. He produced records documenting these complaints and correspondence he generated in trying to resolve the problem. He twice sent memoranda to the Department of Streets requesting an investigation of the matter. He also made verbal requests to persons in the Streets Department on different occasions.
Police department records and personnel showed that as many as seven accidents occurred at the intersection in 1983. The officers stated that the absence of traffic control devices was reported to be a primary contributing factor in at least three of those accidents. The trial court received into evidence the Manual on Uniform Traffic Control Devices which is used by the city and recognized by the State and Federal Governments to determine whether to erect a traffic control signal at an intersection. One of the factors favoring the installation of control signals is a history of frequent serious accident at the intersection. The manual mandates the installation of traffic lights at an intersection where five or more accidents have occurred. Plaintiff contends that an accident record of seven or more accidents in a year is sufficient to require the erection of a stop sign.
The critical legal issue here is whether the City has a duty to install stop signs at an uncontrolled intersection after learning that a number of accidents have taken place there. Expressions of this court are to the contrary. For example, in Adamski v. Burdell, 363 So.2d 1316, 1320 (La.App. 4th Cir.1978) the court made this observation:
The City has no duty to erect signs or other traffic controls, but once it has undertaken such a duty and erected a traffic control, it has assumed the duty to maintain such control and may be held liable for its failure to do so.
In Cangiamilla v. Brindell-Bruno, Inc., 210 So.2d 534 (La.App. 4th Cir.1968) the court held the city liable to a motorist injured in an intersectional collision because the stop sign at the intersection had been knocked down and the city failed to replace it. The court reasoned as follows:
_ It is further argued that the judiciary cannot superimpose its authority on the City’s police power to establish traffic controls. With this assertion we agree, but we do not think the City chose to leave the intersection uncontrolled as it may lawfully do within its police power.
*39 What the City or its agent the Traffic Control Department has done is assumed the duty of maintaining the signs at Treasure and Bruxelles Streets and has failed to carry out this task. As testified to by the City Engineer an unusual hazard would be created by a Stop sign on one approach of Treasure Street and none on the other. Certainly the underlying factor to this collision involves Mr. Cangiamilla’s reliance on the protection the Stop sign would have given him; and likewise it would have warned Mr. Locke on Treasure Street.
The same rationale was employed by the First Circuit in Pickering v. Washington, 260 So.2d 340 (La.App. 1st Cir.1972) writ refused, 261 La. 1062, 262 So.2d 43 in discussing the Highway Department’s failure to erect a left turn lane in a highway:
However we know of no statute or reported decision which places an affirmative duty to construct left-turn lanes at a highway crossover even though the accident rate at such crossovers may be indicative that traffic has created a hazardous situation. To the contrary, the law places a duty on the motorist rather than the Department to ascertain whether a left turn or “U” turn can be made in safety.
These cases recognize that the cause of an accident at an intersection which the City never chose to control by stop or yield signs is the negligence of each motorist who had no right to assume that the absence of a sign gives him the right-of-way over the other. In such a case the motorist has the duty to approach the intersection with great caution because he must recognize that a motorist on the cross street has the same right to proceed through the intersection as he does. If he breaches this duty he cannot shift his responsibility to the city on the notion that he was entitled to a stop or yield sign.
We are aware of cases such as Ledbetter v. State, Dept. of Trans. and Dev., 502 So.2d 1383 (La.1987) and Mullet v. State through DOTD, 539 So.2d 897 (La.App. 4th Cir.1989), writs denied 541 So.2d 1390 which hold the governing body liable for failing to signalize or redesign an intersection or other highway condition which is inherently dangerous or which constitutes a trap for the motorist. But the present case did not arise out of a danger inherent in the intersection. There is no evidence that this was a “blind” intersection such that the motorists could not avoid the hazard despite the exercise of reasonable diligence. On the contrary, the cause of this accident was the negligence of two motorists who blindly entered an intersection with absolutely no right to assume that they had the right-of-way.
The judgment appealed from is affirmed.
AFFIRMED.