SAVOY, Judge.
Plaintiff filed this tort suit against the City of Many, Louisiana, and its insurer, The Travelers Insurance Company, to recover damages for personal injuries received and medical expenses incurred when he was burned in a fire which occurred in the City Jail in Many, Louisiana, while plaintiff was incarcerated. The defendants denied the allegations of negligence, and expressly alleged that plaintiff’s injuries resulted from his own intentional act, thus barring any recovery.
The record reveals that on March 16, 1969, Mr. Edward Lewing, while on duty as a city policeman for the City of Many, came upon plaintiff who had been involved in an automobile accident on the Natchitoches-Zwolle bypass, still sitting in his vehicle. When Officer Lewing approached the vehicle, plaintiff exited, swinging and cursing. As Officer Lewing was subduing plaintiff, and in the process of handcuffing him, Mr. Wingate Dowden, a Louisiana State Policeman, came upon the scene in response to a radio report that Officer Lewing was having difficulty with plaintiff.
After Officer Lewing searched plaintiff, Trooper Dowden assisted him in placing plaintiff in the City police car. Then after removing plaintiff’s automobile from the road, they proceeded to the Many City Jail where plaintiff was booked and searched again and placed in one of the cells. A short time thereafter Officer Lewing and Trooper Dowden received a radio report that the City Jail was on fire, and they both returned to the jail in their respective vehicles. Trooper Dowden arrived first, obtained the keys from the radio operator, a 15-year-old high school student by the name of Roger Bryant, opened the three cells each containing one prisoner, and then Officer Lewing arrived to drag plaintiff out and to administer first aid. Subsequently, plaintiff was taken to a hospital and treated for second and third degree burns over portions of his body.
Suit was then instituted by plaintiff to recover damages for his injuries and medical expenses against the City of .Many and its insurer alleging that the City’s employees were negligent in allowing paintiff, who was in an intoxicated condition, to harm himself, and in not having an attendant on duty who had the authority to remove the prisoners from the cells. Additional allegations of negligence were made, and alternatively, the plaintiff invoked the doctrine of res ipsa loquitur.
The trial court rejected plaintiff’s demands and dismissed his suit at his costs, and he appealed, contending the trial court *753 erred in: ruling that plaintiff intentionally set the bed in the cell on fire and knew what he was doing at all times when all the defense witnesses had testified that plaintiff was extremely intoxicated; ruling that the City of Many had no duty to keep a jailer on duty to handle emergencies such as fires in the jail; and, ruling that the police had searched plaintiff and that plaintiff had nothing with which to start a fire, and in the same ruling holding that plaintiff set the cell on fire.
Plaintiff testified that he had been drinking heavily up to the time of the accident, and that the last thing he could remember prior to awakening in the City Jail was his drinking some beers and a fifth of gin at Foster Woods’ house. He testified he had formerly been a professional fighter and a member of Alcoholics Anonymous. He did not recall anything except when the fire awakened him.
Plaintiff’s wife, Mrs. Walter Griffis, testified that she saw her husband shortly after the fire, and that when she went to the hospital, they gave her his clothes to take home, which clothing contained his matches, his cigarettes, his knife and some 7&‡ in change.
Officer Lewing testified that he was presently employed by the Louisiana Wildlife, but at the time of the fire was employed as a city policeman for the City of Many. He testified that the plaintiff was very belligerent and cursed him and started fighting with him when he attempted to question him about the automobile accident, and that after wrestling with plaintiff in the mud and water, he finally subdued him and handcuffed him. He stated that he searched plaintiff at the time he was handcuffed and also searched him when they arrived at the jail and found nothing on his person, not even a wallet. He said plaintiff was intoxicated and was belligerent all the way into the cell. He had given the radio operator instructions not to open the cells, and that there were two prisoners other than the plaintiff in jail at the time. He further said that he removed one of the prisoners from that cell, locked him up with the other prisoner temporarily so that he could put plaintiff in one of the cells. He then placed one of the other two prisoners in the main cell.
Trooper Dowden testified that he had been a state trooper for eight years, and that he arrived at the scene of the accident just as Officer Lewing was handcuffing plaintiff. He searched plaintiff prior to placing him in the police car and found nothing on plaintiff. He then followed Officer Lewing to the City Jail where Officer Lewing searched plaintiff again. He said that plaintiff repeatedly said to him, “I- will kill you.” When he heard on his car radio that the City Jail was on fire he rushed right over and unlocked the cells as he came to them.
Roger Bryant testified that at the time of the fire he was the radio operator for the City of Many working under a youth program whereby the Federal Government paid his salary. He was present when plaintiff was brought into the jail. He said plaintiff appeared to be intoxicated and was very uncooperative and kept threatening to kill Trooper Dowden. He saw Trooper Dowden search plaintiff while he was handcuffed and lying on his side. After plaintiff was placed in one of the small cells, he testified that plaintiff threatened him if he did not open the cell, and also said that he was going to kill Trooper Dow-den. He said that the Negro man in the large cell told him that plaintiff had some matches and was going to set the jail on fire if he was not freed. When questioned as to whether a prisoner in the large cell could have handed a cigarette or match to plaintiff in the small cell, Bryant answered in the affirmative. When the fire broke out, Bryant stated he radioed Officer Lew-ing as to the occurrence.
Plaintiff relies upon the case of Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970), as support for the-proposition that a greater duty of care is im *754 posed upon police officers to be sure that no harm comes to one in their custody when the person apprehended is in an intoxicated condition. In Barlow the court stated the following' principle of law:
“ * * * when a person is so intoxicated as to be incapacitated for physical or mental effort, a greater duty is owed to him by the person whose duty it is to exercise care for his safety. * * * Such an intoxicated person has been likened to that of a child of tender years.”
In the Barlow case, supra, the court allowed recovery when a police officer left an extremely intoxicated person in a locked police car for a short period of time, and the car ignited causing burns to the plaintiff in the case. However, the plaintiff in the case appeared to have been a “docile drunk” and so intoxicated that he could not even walk without assistance. In our case at bar, plaintiff was far from physically incapacitated as he continually scuffled with the police from the moment he was approached until he was placed in the cell. All the time he had enough presence of mind to threaten and curse the officials in their line of duty. Although plaintiff was intoxicated, he was not sufficiently so as to place him within the ambit of the rule enunciated in the Barlow case, supra. The trial judge was of the opinion that the officers had taken every reasonable precaution that could have been taken under the circumstances, and that the acts of plaintiff himself caused his injuries.
The facts of this case appear to be more in line with those in the case of Manuel v. United States Fire Insurance Company, 140 So.2d 702 (La.App. 3 Cir. 1962). In that case this Court denied recovery when a prisoner’s finger was mashed in a cell door. The prisoner walked into the jail and into an open cell without assistance, but when the door was about to be closed a struggle ensued and the finger was mashed. We stated that even when a person is known to be intoxicated, it may be assumed, if he does not appear to be physically incapacitated, that he will take some precautions to preserve himself from injury. And, we stated the rule as to contributory negligence as follows:
“Voluntary intoxication does not relieve one from contributory negligence, or serve to relax the requirement which is imposed upon a person to exercise due care for his own safety. Every person is bound to a duty of exercising his intelligence to discover and avoid dangers that may threaten him, and intoxication voluntarily produced can constitute no excuse for a failure fully to perform this obligation. One who has voluntarily disabled himself by reason of intoxication is held to the same degree of care and prudence in the interest of his own safety that is required of a sober person. * * * »
The trial court, after hearing the evidence, concluded that the officers had done everything reasonable under the circumstances, and that plaintiff’s own act caused his injuries. With this finding we cannot say there is manifest error. Nor do we feel that the City of Many should have had officers full time to watch the jail. Mayor Godfrey testified that the radio operator was not only in contact with the city officers, but also with the state police and Sheriff’s office in the event help was needed.
For the above reasons the judgment appealed from is affirmed at plaintiff’s costs.
Affirmed.