273 So.2d 523 (1973)
Walter T. GRIFFIS, Plaintiff-Relator,
v.
The TRAVELERS INSURANCE COMPANY et al., Defendants-Respondents.
No. 52313.
Supreme Court of Louisiana.
February 19, 1973.
Dissenting Opinion February 27, 1973.
*524 Makar & Whitaker, John B. Whitaker, Natchitoches, for plaintiff-applicant.
Blanchard, Walker, O'Quin & Roberts, Wilton H. Williams, Jr., Shreveport, for defendants-respondents.
CALOGERO, Justice.
This is an action in tort in which plaintiff, Walter T. Griffis, sues for injuries resulting from a fire which occurred while he was incarcerated in the Many City Jail, in Many, Louisiana. The Travelers Insurance Co., general liability insurer of the City of Many, is made defendant.
We granted certiorari, 259 So.2d 919, at the instance of the plaintiff to review a judgment of the Third Circuit Court of Appeals, 257 So.2d 751, affirming the Eleventh Judicial District Court which rejected plaintiff's demand and dismissed the action.
On March 16, 1972, the plaintiff was arrested by Officer Ed Lewing, of the Many City Police Department, following an automobile mishap. Lewing, assisted by State Trooper Wingate Dowden, managed to carry the plaintiff into a police vehicle following a scuffle between the plaintiff and Officer Lewing in which the plaintiff managed to pull Officer Lewing down into a ditch beside the road. Both officers testified that the plaintiff was highly intoxicated at the time, and exhibited a belligerent, drunken attitude, at times shouting to the officers, "I will kill you." Plaintiff testified that he had consumed liquor prior to this incident, and was intoxicated. There is testimony from both of the officers that the plaintiff was searched prior to being carried to the police vehicle.
After being carried to the police vehicle the plaintiff was taken to the Many City Jail. Trooper Dowden followed in his own vehicle. Both officers testified that the plaintiff was searched again at the jail. The search carried on there was witnessed by another party, Roger Bryant, a 15-year old high school student who was hired to operate the police radio for the City of Many. Both officers testified that the plaintiff had absolutely nothing on him, not even a wallet.
Plaintiff was next placed in one of the jail cells. The jail consists of three cells, one main cell, with two smaller cells within the main cell. The doors of the smaller cells are approximately eight feet apart. At the time the plaintiff was placed in the jail there were two other prisoners occupying the jail. The plaintiff was placed in one of the smaller cells and the other prisoners were placed in each of the remaining cells. There are openings in the doors in the nature of wire mesh from each of the smaller cells to the large cell through which it is possible to pass small objects such as cigarettes and matches.
*525 After the plaintiff was locked in the jail cell both officers left the jail. Officer Lewing returned to his home to change uniforms, and Trooper Dowden continued his regular rounds as a State Trooper. The only person left in charge of the jail was young Roger Bryant, who stated that the plaintiff was drunk and was shouting to the officers as they placed him in the cell.
Approximately twenty minutes after he had left the jail, Officer Lewing received a radio call from Bryant. The officer testified that Bryant told him that the plaintiff "had set the jail on fire." At the time he received the radio call, Lewing was only a mile from the jail and he reached the jail in less than two minutes (he testified that he was traveling at about 70 m.p. h.). Trooper Dowden, who also heard the radio call, arrived at the jail seconds prior to Lewing, opened the plaintiff's cell (which was completely smoke filled) and dragged him out into the radio room of the jail. From that point Officer Lewing dragged the plaintiff out of the jail into the street, and he was eventually taken to the hospital and treated for burns of the hands, arms, and face.
From the testimony of Officer Lewing we gather that two foam rubber mattresses in the plaintiff's cell were the origin of the fire.
The plaintiff relies upon our decision in the case of Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970). In that case, we allowed recovery where an intoxicated person was severely burned after being locked in a police car and left unattended for some minutes. The plaintiff there was in such a state of intoxication that it was necessary for the police officers to physically assist him to the police car. We recognized a general rule that police officers are charged with a higher degree of care for a prisoner's safety and protection when the officers are aware that the prisoner is in an intoxicated state than is necessary in the case of a prisoner who has control of his physical and mental faculties.
The defendants on the other hand contend that although our decision in the Barlow case, supra, is correct, the facts of this case do not bring it within the rule there enunciated. Rather, they argue that the extent of the plaintiff's intoxication in this case was not sufficient to relieve him of the general duty to protect himself from injury, and he cannot recover for injuries suffered as a result of his own negligent or intentional act. Furthermore, they argue that the facts of this case appear to be more in line with those in the case of Manuel v. United States Fire Insurance Co., 140 So.2d 702 (La.App.3rd Cir. 1962). In that case the Third Circuit Court of Appeal denied recovery when a prisoner's finger was smashed in a cell door. The prisoner, slightly intoxicated, walked into the jail and into an open cell without assistance, but when the door was about to be closed a struggle ensued and the prisoner's finger was smashed. The court of appeal stated that even when a prisoner is known by the officers to be intoxicated, it may be assumed, if he does not appear to be physically incapacitated, that he will take some precautions to preserve himself from injury.
The Court of Appeals, in the case before us, found that the Barlow decision had no applicability here for the reason that the plaintiff was not sufficiently intoxicated to bring him under the rule contained therein. They found that the hostility exhibited by the plaintiff during and after his apprehension by the police precluded a finding that he was intoxicated to the extent that he was no longer responsible for his own negligent acts. For this reason, the judgment of the trial court rejecting the plaintiff's demand was affirmed.
On this appeal, we first direct our attention to the cause of the fire. The testimony of Officer Lewing indicates that the fire originated on the two foam rubber mattresses which served as a bed, and were located within the plaintiff's cell.
*526 Since there is abundant testimony that the plaintiff was searched prior to being placed in the jail cell, and that he had nothing on him at the time he was placed in the cell, we find that the plaintiff in all probability was able to obtain cigarettes and matches from one of the other prisoners in the jail by way of the small openings in the cell doors. Officer Lewing testified that at least one of the other prisoners had smoking privileges at the time plaintiff was incarcerated. We must rule out the possibility that the plaintiff negligently fell asleep with a lighted cigarette, and thereby caused his injuries, as the transcript does not show this to be so. Both of the officers testified that the plaintiff was shouting madly at the time they left the jail. Moreover, the testimony of Roger Bryant who remained in the jail indicates that for some time after the officers had left, the plaintiff was still very much awake, and continued to exhibit a hostile attitude. Bryant testified that the plaintiff was "mumbling something" and after a while plaintiff told him that he was going to beat him if he did not release him from the cell. More significantly, however, Bryant testified that the prisoner in the cell next to the plaintiff shouted out that the plaintiff had matches and was threatening to set the jail on fire if Bryant did not release him. Bryant further testified that shortly thereafter, he noticed smoke coming from the plaintiff's cell at which time he immediately contacted Officer Lewing, on the radio.
From this testimony, it is apparent that the plaintiff was not asleep immediately prior to the fire, and we can therefore conclude that he did not carelessly fall asleep with a lighted cigarette as he alleged in his petition. Rather, we find that the plaintiff set fire to his mattress in a drunken rage because Bryant refused to release him. The testimony of Bryant as to what the other prisoners shouted to him, that is, that plaintiff was threatening to start a fire, substantially corroborates this conclusion.
Having found that the fire was intentionally started by the plaintiff, we now focus upon the question of whether it was negligent for the officers to allow him to have access to matches by way of the other prisoners in the jail.
We start with the basic premise that a police officer owes a duty to his prisoner to save him from harm. See 41 Am.Jur. Prisons and Prisoners, Sec. 12, Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970). However, this means that the officer must do only what is reasonable under the circumstances, and he is only liable for a certain category of risks to which his prisoner may be subjected. In Barlow v. City of New Orleans, supra, we held that where the prisoner is intoxicated and physically incapacitated the officer should not leave him unattended in a locked police car, because the officer owes the prisoner a duty to avoid the risk that he might in his incapacitated state, negligently light a cigarette and thereby start a fire. In that case there was no evidence that the plaintiff was searched prior to being locked in the police car.
In the instant case we are, in effect, asked to extend the rule of the Barlow case, to hold that a police officer owes a duty to his intoxicated prisoner to save the prisoner from the risk that he would in a drunken rage, intentionally start a fire while locked in his cell and thereby sustain injury. However, pretermitting the argument that the Barlow case is inapplicable where the intoxicated prisoner intentionally starts the fire, and assuming that the officer is under the duty to save the prisoner from this risk, all that is required of the officer is that he do what is reasonable to avoid the risk. He is not an insurer of the safety of the prisoner merely because the prisoner is intoxicated.
We feel that in the instant case the officers did not breach the duty owed to Mr. Griffis. They did all that is to be reasonably expected under the circumstances. The transcript indicates that they conducted *527 a very thorough search of Mr. Griffis prior to putting him in the cell, and they were satisfied that he had no articles on his person with which he could injure himself, including cigarettes and matches. Were we to hold otherwise we would, in effect, make the officers an insurer of Mr. Griffis' safety.
Since we have held that the officers were not negligent with respect to the plaintiff, and that he was the cause of his own injury we must now face the contention of the plaintiff that the City of Many was negligent for its failure to have someone in charge of the jail with the authority to remove the prisoners in case of an emergency.
Although the testimony indicates that Roger Bryant may not have had the authority to open the cells on this occasion, we find that since he was in close contact with both the state police and the Many City Police via radio, and that since the plaintiff was actually removed from the cell in less than two minutes after the fire started, the City of Many was not negligent in this respect.
Accordingly, for the reasons assigned, the judgment of the Third Circuit Court of Appeals is hereby affirmed.
BARHAM, J., dissents and assigns reasons.
BARHAM, Justice (dissenting).
The majority has found that an intoxicated prisoner, the plaintiff, intentionally set fire to the mattresses in his cell in the city jail of Many, Louisiana. It recognizes that in Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970), this court held that police officers owed a duty to an intoxicated prisoner to save him from the injury arising from a risk that in a drunken rage the intoxicated prisoner would negligently start a fire. The majority then seems to turn the instant case on the facts of the Barlow case rather than upon the particular facts which existed here.
Griffis, the plaintiff, was arrested in a very intoxicated condition. He was so drunk as to resist arrest and remained belligerent and incoherent during the entire arresting and booking processes. He was locked in one of two small cells within the main cell of the jail. Two other prisoners were incarcerated at that time, one in the main cell and one in the other small cell. According to the testimony of Roger Bryant, a young man who was acting as radio operator and jailer, the plaintiff was so drunk he could hardly stand and had to be dragged into the cell. Bryant heard Griffis complain and repeatedly say that he was going to do certain things. One of the other prisoners came to the cell door, which was apparently visible to the jailer, and said that the plaintiff was going to "set the jail fire". Bryant went to the door of the big cell, looked at the cell in which Griffis was locked, which was 20 feet away, and saw smoke coming from that cell. He immediately radioed one of the arresting officers and reported the fire. Officers Lewing and Dowden arrived in what the jailer approximated to be two minutes from the time of the call.
The majority finds that there is some discrepancy as to whether Bryant had authority to open the cell doors in circumstances such as these. The city marshal, however, who was in charge of the jail, stated that Bryant had the authority, and the keys to all of the jail cells were left in his keeping. In my opinion it is immaterial whether Bryant had absolute instructions not to open the cell doors under the facts of this case. Bryant, who had the keys to the enclosure, had the effective custody and control over the prisoner in that enclosure, and knew the prisoner to be in immediate danger of death or severe injury, was obligated to release the prisoner. But even more pertinent, Bryant opened the doors of the main cell and the other small cell and released the other two prisoners. *528 The negligence of Bryant, which makes the City of Many vicariously liable, is that although he showed he had authority and ability to timely release Griffis, who was in immediate danger, he did not do so.
The majority has found that "* * * since the plaintiff was actually removed from the cell in less than two minutes after the fire started, the City of Many was not negligent * * *".
I do not accept the testimony that all of this activity transpired in less than two minutes. It is, in my opinion, impossible for all the occurrences, from the beginning of the fire until an officer took the charred and smoke-filled body of the plaintiff out of the jail cell, to have happened within two, three, or four minutes. I am not a devotee of the doctrine of last clear chance, but since our jurisprudence recognizes the doctrine for the purpose of exonerating one wrongdoer, I must state that here is a factual situation which would adapt itself to that legal principle. It is immaterial whether Griffis started the fire negligently or intentionally. Bryant had every opportunity to open the cell door and prevent Griffis from suffering injuries. However, I would state the proposition more simply, relying in part upon the language of Barlow which speaks of the particular duty of care owed by a police officer.
Although much has been made of Bryant's youth, he held the position of radio operator and jailer for the City of Many and was an officer of the police department of that city. He owed a special duty to those whose lives and wellbeing were literally in his hands, since he held in his hands the keys to the cell doors which limited their freedom. Regardless of the conduct which placed Griffis in the position of peril, Bryant held the key to extract him from that position. He owed the duty to protect him from the exact risk which caused this harm. He had the opportunity to exercise that duty so as to avoid the ensuing injury. He did not do so. The negligence of Bryant is his failure to discharge the special duty imposed upon him by the nature of the circumstances and his relationship to the plaintiff. The City of Many is vicariously liable for his negligence.
I respectfully dissent from the majority opinion.