417 So.2d 48 (1982)
Renita GARRISON
v.
The CITY OF BERWICK, et al.
No. 14916.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
*49 Dennis Jude Dannel, New Orleans, for plaintiff.
Dennis L. Doise, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for Town of Berwick, City Police Dept., Ivory Thomas, and Carl Thornton, defendants.
Gregory P. Aucoin, Morgan City, for Warren James, Jr., defendant.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
This case involves injuries sustained by plaintiff Renita Garrison while she was in the custody of Berwick police officers. The facts are as follows.
On April 29, 1979, an argument arose between Warren James, Jr., and his wife's sister, Renita Garrison.[1] Garrison allegedly fired several shots in James' direction as he stood in front of Shirley Williams' house. (Mrs. Williams is Ms. Garrison's mother.) James then left the premises and went to his home where he obtained a gun. He returned to Mrs. Williams' house, fired one shot in the air and yelled for Renita to come out. Two officers from the Berwick Police Department arrived at the scene and found James standing in front of the house with his gun in his belt. James refused to hand his gun to the officers until the officers disarmed Garrison. One of the officers, Ivory Thomas, entered the house and found Garrison "in a rage." She seemed to be arguing with her brother and his girlfriend about using her brother's gun. Officer Thomas attempted to restrain Garrison and she tried to remove his gun from his holster. Officer Thomas managed to place the handcuffs on one arm and then called for Officer Thornton to help him. Officer Thornton was unable to enter the residence because of someone or something blocking the door, but finally managed to force his way in. He helped Officer Thomas handcuff Garrison and the three of them left the residence. Ms. Garrison continued to struggle as she was moved forceably toward the police car. She was arrested for disturbing the peace.
Officer Thornton testified a crowd of approximately forty persons had gathered outside. Most were neighbors from the surrounding buildings in the housing project. Some were rather hostile and at least one tried to interfere with the officers putting James in the police car. James told the officers he did not want to be handcuffed but would go voluntarily with them to the *50 police station. Officer Thornton testified that because of the hostile nature of the rather large crowd he felt it was in the best interest of all for him to avoid delay and therefore allow James to get into the police car even though he was not handcuffed. James and Garrison were placed in the back seat of the vehicle.
Testimony established the ride from the scene of the arrest to the police station was approximately five minutes long. Several blocks from the Williams' house the officers became aware James and Garrison were arguing in the back seat. Garrison was ridiculing James about his sex life and repeating disparaging remarks allegedly made by her sister and his wife, Regina. James testified Garrison was also spitting on him and kicking him. James announced he was going to hit Garrison if she didn't leave him alone. Officer Thornton then stopped the car and announced to Officer Thomas he was going to attempt to handcuff James. Officer Thomas advised Thornton to proceed to the police station because six or seven cars containing Garrison's neighbors were following close behind. The car continued on but shortly thereafter James struck Garrison in the face. The car was stopped immediately and the two arrestees were separated. James' father was following in a nearby car and volunteered to take his son to the police station. Garrison's left eye was wounded and required four or five stiches.
Plaintiff filed suit against the City of Berwick,[2] Officer Ivory Thomas, Officer Carl Thornton, and Warren James, Jr., alleging her left eye had been injured and she had suffered a recurrence of epileptic seizures which had been in a dormant stage for several years prior to the accident.
A jury trial was held and judgment was rendered in favor of the City of Berwick and the two police officers and against Renita Garrison. Judgment was rendered in favor of Garrison and against Warren James, Jr., in the amount of $500. Ms. Garrison then filed this devolutive appeal. Mr. James did not appeal.
Appellant contests the jury's findings as to the liability of Officer Thornton, Officer Thomas and the City of Berwick. She also alleges the award of $500 was insufficient and that the court erred in denying her motion for a new trial.
We find no manifest error in the jury's determination that Officers Thornton and Thomas were free of fault. A police officer must do only what is reasonable under the circumstances and he is liable only for a certain category of risk to which his prisoners may be subjected. Griffis v. Travelers Insurance Company, 273 So.2d 523 (La.1973).
The totality of the facts in the present case suggest the two police officers acted reasonably under the circumstances. At the scene of the arrest they were concerned with detaining two persons: Renita Garrison and Warren James, Jr. Garrison was extremely agitated, both physically and emotionally, during the entire incident. Testimony established Officer Thomas found her in a heated dispute with persons inside the house when he entered. He found it necessary to handcuff her, an act which she violently resisted. She then attempted to grab his gun. It took both police officers to handcuff her and to remove her from the house. She continued to struggle as she was taken to the police car. Once in the car she began the physical and verbal harrassment of Warren James, Jr. Even after the subjects were separated she spit on Officer Thomas as she was being removed from the car outside the police station.
The other arrestee, Warren James, Jr., was found initially standing calmly outside the house. Although at first he refused to hand over his gun he did so later voluntarily. He remained outside the house while both police officers were dealing with Ms. Garrison inside. He did not attempt to flee or to avoid arrest in any manner. He voluntarily put himself into the police car but insisted he not be handcuffed. The record indicates a large crowd had gathered in the *51 yard and an atmosphere of hostility prevailed. At least one member of the crowd attempted to prevent Officer Thornton from arresting and taking Warren James, Jr. Officer Thornton testified the situation gave him no choice but to allow James to get into the car without handcuffs. Under the circumstances we cannot say the officers acted unreasonably. The following testimony by Officer Thornton sheds light on the issue:
"Q: Now why didn't you handcuff Mr. James?
A: Well as I stated before, Mr. James voluntarily and willingly went to the vehicle, he knew he was under arrest; no problems. The fact that two officers were involved and in excess of forty or fifty people; the cursing, screaming, hollering and the fact that it was turning into what I consider a bad situation due to the fact that there were only two police officers as opposed to forty or fifty people, there could have been a violent situation."[3]
* * * * * *
"Q.... Now, how long would it take you to have handcuffed Warren James, Jr.?
A: Under those circumstances and the situation around, to be perfectly honest, in my opinion, we would never have got him handcuffed."
In summary the police officers made a reasonable decision to handcuff the hostile arrestee and to allow the other arrestee to remain without handcuffs due to his comparatively cooperative nature and the need to get away from the increasingly hostile crowd.
Concerning the reasonableness of the officers' action in the police car while en route to the station, we note Officer Thornton made an initial attempt to prevent the harm but was convinced by his coworker that to do so would endanger their safety. The officers instructed James not to strike Garrison and to remain calm. As soon as James hit Garrison the car was stopped and the subjects were separated. Taken as a whole we find the officers acted reasonably under the circumstances.
Further, we cannot say the policemen breached any duty owed Renita Garrison. In Griffis, supra, the Supreme Court refused to hold police officers had a duty to an intoxicated prisoner to save himself from the risk he would start a fire in his cell while in a drunken rage. Likewise, we decline to hold these officers had a duty to Garrison to protect her from the risk of being struck by another arrestee after she had kicked, cursed, and spit at him. Certainly our analysis would be different if the record showed James was the aggressor while Garrison sat handcuffed and unable to defend herself. To the contrary, the record indicated clearly Garrison was the instigator of the back seat altercation.
Because we agree with the jury Officers Thomas and Thornton are not liable, we necessarily conclude the City of Berwick, sued under the doctrine of respondeat superior, is also not liable.
We note the facts presented by Officers Thomas, Officer Thornton and Warren James, Jr., are quite diametrically opposed to those presented by Renita Garrison and by other witnesses testifying for her.[4] Garrison and her witnesses insisted she never had access to a gun, that she was upset during the incident but not nearly as violent as the police officers and James described her, and that James began hitting her even before she got into the police car. Renita testified the reason she kicked James in the car was because he first poked her in the nose.
The testimony of the police officers and James was corroborated by that of a neighbor, Herman Kleinman. Kleinman watched the incident from his bedroom window. He *52 stated he heard shots and looked out the window and saw James leaving the scene. Fifteen minutes later he heard more shots. He stated Garrison resisted getting into the police car and that the crowd was hostile toward the policemen.
As always, in matters of credibility, the fact finder is given a great deal of discretion. In this case the jury was able to observe the demeanor of the witnesses and make an accurate evaluation as to which parties were the most credible. Where evidence is conflicting we should not disturb the fact finder's reasonable evaluation of one set of witnesses as credible and its consequent rejection of testimony of the opposing set of witnesses; nor should we disturb the jury's reasonable factual inferences drawn from testimony found by it to be credible. Billiot v. Bourg, 338 So.2d 1148 (La.1976). After reviewing the record we conclude there is no justification for disturbing the jury's findings as to credibility.
Concerning the quantum, after reviewing the record we find the award of $500 was within the discretion of the jury. The jury obviously did not find plaintiff to have proven by a preponderance of the evidence her epileptic seizures recurred as a result of the assault. Therefore, the only injury for which they granted an award was her "black eye" and the laceration on her face. We find no abuse of discretion in awarding $500 for these injuries. La.C.C. art. 1934(3).
Appellant contends her motion for a new trial should have been granted. At trial, Regina James, testified initially she had not seen Renita with a gun. The next day she changed her testimony and admitted she had lied previously because she had "been in an awkward position" living with her mother and sister. She then testified Garrison did have a gun on the evening in question and had shot at Warren James, Jr. In the motion for a new trial appellant contends a "representative of the City of Berwick" had approached Regina after the first testimony and had threatened her with a jail sentence for perjury if she did not change her testimony. The trial court denied the motion for a new trial.
We find no abuse of discretion in the trial court's denial. The issues at trial were whether or not the policemen (and the police department) were liable for their failure to handcuff and restrain Warren James, Jr., and whether or not Warren James, Jr., was liable for his intentional attack. The question of whether or not Renita Garrison was seen with a gun during the dispute has little or no bearing on either of these issues. Even if we were to concede Garrison was not seen with a gun on the night in question we would not conclude the jury verdict was incorrect as to the final outcome of the case. Her possession of a gun simply does not affect our findings as to liability of the policemen or of Warren James, Jr. Therefore, we are in complete agreement with the trial court that the discovery of this "new evidence" did not warrant the granting of a new trial.
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.
NOTES
[1] Virtually all facts concerning the argument and the subsequent course of events were disputed at trial. We will set forth the version which the jury apparently found to be the most credible.
[2] The correct name of the municipality is the Town of Berwick.
[3] Officer Thornton is white, Officer Thomas and all others involved are black.
[4] Other witnesses who corroborated Renita's version of the events were her brother, Reginald Augman, his girl friend, Yvette Vilo, and her mother, Shirley Williams.