442 So.2d 1375 (1983)
Bruce H. LANGFORD, Plaintiff-Appellant,
v.
CITY OF LEESVILLE, Defendant-Appellee.
No. 83-444.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
Tillman & Fontenot, Elvin C. Fontenot, Jr., Leesville, for plaintiff-appellant.
Trimble, Randow, Percy, Wilson & Foote, James T. Trimble, Jr., Alexandria, Hall, Lestage & Landreneau, F. Steve Landreneau, DeRidder, Smith, Ford & Clark, John C. Ford, Leesville, for defendant-appellee.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
This is a wrongful death suit. From a judgment dismissing his claim the plaintiff has appealed. We affirm.
After carefully considering the facts as disclosed by the record, we conclude that the trial court was eminently correct in its findings of fact and we adopt those findings of fact as our own. The trial court found as follows:
"Plaintiff sued for the alleged wrongful death of his son, Johnny Langford, who died in September, 1978, as a result of a self inflicted gunshot wound on August 31, 1978. On the latter date he was arrested by Lt. Buck Massey of the Leesville City Police Department incidental to investigation of burglary and theft. Massey was assisted therein by Detective Willard Horton, a Vernon Parish Sheriff's Deputy. The defendants are the City of Leesville and Sheriff Frank Howard, the employers of the officers.
"Young Langford was residing at the time in a small frame dwelling leased by his father and situated across the street from the rear of his father's place of business, Tex's True-Value. The officers enlisted the aid of plaintiff, and, when requested by his father to do so, Johnny Langford surrendered to the officers without resistance.
"After taking him to the police station, Johnny Langford admitted the theft, signed a permission to search, following which the officers and Langford returned to the residence on Schwitzer Street and recovered items taken in the theft. After returning to the police station, the officers *1376 were informed that Langford was also wanted in connection with a burglary and theft in Alexandria. After admitting involvement in the Alexandria offense, he consented again to accompany the officers to the residence to assist them in recovering the goods taken there. On this occasion, after pointing out some of the items taken in Alexandria, and otherwise assisting them, Langford told the officers that he wanted to secure the back door. Officer Massey then accompanied him for that purpose but, as they approached the rear door, Langford broke and ran into the house, locking the door behind him. Shortly thereafter Massey heard two shots and a thud. Detective Horton gained entry through a window and the officers found Langford lying on his back. A blue steel .38 caliber revolver, which neither officer had seen, was lying at Johnny Langford's feet. He was then rushed to the hospital but died as a result of complications from the wound on September 8, 1978, in Alexandria, Louisiana.
"Plaintiff seeks recovery from defendants, contending that the officers were negligent in not restraining the deceased when they knew or should have known that he had been and was then emotionally disturbed and that he had a long record of criminal offenses.
"Plaintiff introduced, without objection, the arrest and offense data relative to Johnny Langford (P-6, in globo).
The offenses charged included: (1) theft of $500.00 alleged to have occurred November 24, 1975; (2) burglary and theft, May 3, 1978; (3) burglary and theft, July 28, 1978; (4) simple escape, August 23, 1978; (5) theft from one Jay Hunt (originally charged by Hunt with armed robbery), June 9, 1978; (6) a charge of crime against nature, 1975; (7) various misdemeanor charges including disturbing the peace, resisting arrest.
"Although the record is incomplete in that it does not reflect the disposition on these various charges, many, if not most of them, did not result in any kind of conviction. Plaintiff did testify that his son had served about one year at Louisiana Training Institute for a juvenile offense.
"The only charge within the two or three years prior to his death which was accompanied by any alleged violence was brought by one Jay Hunt. A careful review of the police records in that case, however, raises serious doubts regarding the credibility of the complaining witness. Following the alleged armed robbery and act of forced sodomy or crime against nature, the alleged victim, according to his own statement, requested Langford to drive him to Fort Polk. Other aspects of the statement of the accuser were entirely implausible. Langford's version of what happened differed markedly, and his statement, unlike that of the alleged victim, was subjected to a voice stress analysis, and the analyst reported no deception on his part. Probable cause was not found for the serious charge of armed robbery.
"Plaintiff's counsel emphasized that Johnny Langford escaped from Detective Horton only a few days prior to the arrest of August 31, 1978. Horton verified the incident but explained that he was brought in only shortly thereafter by his father without resistance or further incidence.
"In summary, the documents and testimony concerning decedent's criminal history reflected that he had been in trouble on numerous occasions, that he had difficulty with his own father, that he took things that did not belong to him and that there was aberrant behavior on his part. They do not, however, reflect facts that would have led the officers reasonably to believe that he had suicidal proclivities or that he would do violence to himself.
"The facts show, on the contrary, that for a person who had been charged with the serious offenses of burglary and theft here and in Alexandria, he was being most cooperative with the investigating officers, even to the extent of assisting them in carrying the alleged stolen items from his residence to the police car.
"No authority has been cited, nor am I aware of any, which mandated that these *1377 officers place handcuffs or leg irons on the accused deceased under the circumstances presented by the evidence. Being arrested and "cuffed" is doubtless a traumatic experience, and the more usual complaint is the abuse of the authority to restrain. There was no evidence that this arrestee was under the influence of intoxicants, or hopped up on drugs, or otherwise not lucid."
Based on these facts the trial court determined that the police officers were not under a duty to place handcuffs upon the deceased or otherwise restrain the deceased from harming himself since the officers were not dealing with a person of known suicidal tendencies or of a known vicious nature. The trial court further reasoned that the risk of harm encountered by the deceased (that he would intentionally or accidentally shoot himself) was not within the ambit of any duty owed to the deceased by the officers since they had no knowledge of any violent or suicidal tendencies by the deceased. Therefore the trial court found no liability on the part of the defendants.
The issue presented by this appeal is whether the trial court erred in denying liability on the part of the defendants.
In the case of LeBlanc v. State, through Dept. of Corrections, 393 So.2d 125 (La. App. 1st Cir.1980), writ denied 394 So.2d 1235 (La.1980) the court stated:
Under the analysis of Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), four inquiries must all be answered in the affirmative before a plaintiff can recover.
1) Did the act of the defendant play a substantial factor in bringing about harm to the plaintiff, i.e., was it a cause in fact of the harm that occurred?
2) Did the defendant owe a duty to the plaintiff?
3) Was the duty breached?
4) Do the risk and the harm encountered by the plaintiff fall within the scope of protection afforded by the duty which was breached?
In the present case we need not answer the initial three inquiries since the final one must be answered in the negative.
According to the plaintiff, the breach of duty was the failure to prevent the deceased from escaping and doing harm to himself.
A police officer owes a duty to his prisoner to save him from harm. However, this means that the officer must do only what is reasonable under the circumstances, and he is only liable for a certain category of risks to which the prisoner may be subjected. Griffis v. Travelers Insurance Company, 273 So.2d 523 (La.1973); Barlow v. City of New Orleans, 257 La.91, 241 So.2d 501 (1970).
In the present case there is no evidence in the record to suggest that the plaintiff would escape for the purpose of doing harm to himself. Both officers testified that they had no reason to believe that Johnny Langford would harm himself. No evidence was presented to show that Johnny Langford had ever attempted to harm himself prior to this incident. The deceased's prior criminal record reveals no propensity to do violence to himself.
Since there was no evidence showing that the deceased had suicidal tendencies or a propensity to harm himself, the risk of harm encountered by the plaintiff (that he would intentionally escape for the purpose of harming himself) does not fall within the scope of the duty owed by the officers to save their prisoner from harm.
For this reason, the judgment of the trial court is affirmed at plaintiff's costs.
AFFIRMED.