WATKINS, Judge.
Plaintiff, Ana Bustamante, instituted this action to recover damages for injuries she sustained in an automobile accident while a guest passenger in an automobile owned by her sister, Marta Bustamante. Made defendants were the driver of the other vehicle, James A. Price, his insurer, State Farm Mutual Automobile Insurance Company (State Farm), and Marta Busta-mante’s liability and uninsured motorist carrier, Champion Insurance Company (Champion). A third party petition was subsequently filed by James Price and State Farm against Marta Bustamante and Champion.
The plaintiff also instituted suit against the insurance agencies which sold Marta Bustamante her automobile insurance, Auto Term Insurance Agency, Inc. (Auto Term) and United Southern Underwriters, Inc. (United), for negligently failing to advise Marta Bustamante concerning medical payments coverage and sufficient liability and uninsured motorist coverage. Auto Term and United were dismissed from the suit in a prior proceeding. Ana Bustamante v. State Farm Mut. Auto. Ins. Co., 517 So.2d 232 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988).
After trial on the merits, the jury found that the accident was caused solely by the negligence of Marta Bustamante and awarded damages in the amount of $12,-500.00 ($5,000.00 for past pain and suffering and $7,500.00 for medical expenses). Accordingly the trial court rendered judgment in favor of Ana Bustamante and against Champion as the liability carrier of Marta Bustamante in the sum of $5,000.00.[1] The court further ordered the dismissal of the plaintiff's claims against James Price, State Farm, and Champion as the underinsured motorist carrier for Marta Bustamante. In addition, the third party demand of State Farm and James Price against Marta Bustamante and Champion was dismissed. All parties appealed.
The accident occurred on May 24, 1983, at approximately 8:51 a.m. when the vehicle in which Ana was a guest passenger was struck by the vehicle owned by James Price at the intersection of North Foster and Florida Boulevard in the city of Baton Rouge. At the time of the accident, Florida Blvd. eastbound consisted of three travel lanes, plus one left turn and one right turn lane. Florida Blvd. westbound consisted of three travel lanes plus one left turn lane and one right turn lane. The three travel lanes (eastbound and westbound) were controlled by two traffic signals, and the left turn lanes (eastbound and westbound) were controlled by separate traffic signals.
Immediately prior to the collision the Bustamante vehicle, being driven by Marta, was traveling west on Florida Blvd. and had stopped in the left turn lane awaiting the green arrow on the traffic signal which would permit her to turn left. She claimed *227 that when the signal turned green she proceeded with her left turn. At the same time James Price, who was traveling eastbound on Florida Blvd., claimed to have the right of way by virtue of a green light.
The investigating police officer, Stephen C. Jackson, testified that the traffic signals at the intersection of Florida Blvd. and North Foster were operating properly immediately after the accident. He explained that the signal sequence allowed all eastbound lanes of Florida Blvd., including the left turn lane, to proceed while all other signal lights remained red. A short time later the eastbound left turn signal would go amber and then red. Thereafter, the traffic signals for westbound Florida Blvd. traffic, excluding the westbound left turn lane, turned green allowing traffic to flow east and west on Florida Blvd. The eastbound traffic signal would then go amber and red and finally the westbound left turn lane signal would turn green, permitting a driver to turn across the eastbound traffic lanes of Florida Blvd. onto North Foster. The officer determined the point of impact to be in the far west lane of North Foster, approximately six feet one inch north of the south edge of the right turn lane on Florida Blvd. and approximately six feet eight inches from the west edge of North Foster. The officer also determined that the Price vehicle left 46 feet eight inches of skid marks prior to the point of impact. The speed limit at the intersection was 50 mph.
The plaintiff testified that while waiting in the westbound left turn lane of Florida Blvd. she remembers watching for the green arrow and that she in fact saw the arrow turn green before Marta began making her left turn. The plaintiff further testified that she was not paying attention to traffic in the westbound lanes of Florida Blvd. while waiting at the traffic signal, and she did not look at the eastbound traffic when Marta made her left turn. She further stated that she did not see the Price vehicle until immediately before it collided with Marta’s vehicle.
Marta testified that she could not remember if the traffic in the westbound lanes was moving before she made her left turn. However, she stated that she distinctly remembered seeing the green arrow come on and that she checked the eastbound lanes of traffic before proceeding with the left turn, but that she did not look at the eastbound lanes while making the turn. She also testified that it was a clear morning and that her view of the intersection and the eastbound traffic lanes was unobstructed. She could not explain why she did not see the Price vehicle before the collision.
James Price testified that he had entered Florida Blvd. from the northeast after leaving the Miller-Terrell automobile dealership. He crossed over the westbound lanes of Florida Blvd. and stopped briefly in the median and then entered the center eastbound lane of Florida Blvd. He estimated that his point of entry onto Florida Blvd. was approximately 500 to 600 feet[2] from the intersection where the accident occurred. As he approached the intersection he observed the signal for the eastbound traffic and noticed that the left turn signal had turned amber, but that the traffic signals for the eastbound travel lanes were still green. He also noticed that the traffic in the westbound lanes of Florida Blvd. had begun to move west. At this point he saw the Bustamante vehicle turn left in front of him, at which time he simultaneously applied his brakes and turned to the right to avoid hitting the Bustamante vehicle.
On appeal the plaintiff contends that the jury committed reversible error in exonerating James A. Price and in its award of general damages, both as to elements thereof and as to quantum. Champion, in its capacity of U/M carrier, appeals the judgment to clarify the extent of its responsibility as the U/M carrier. State Farm and James Price appeal the trial court’s dismissal of their third party claim against Marta Bustamante and Champion.
*228 We will first address the issue of whether the jury was clearly wrong in finding Marta Bustamante 100% at fault. The statutory law and the jurisprudence of Louisiana “require that the driver of a vehicle intending to turn left within an intersection yield to oncoming vehicles which are ‘within the intersection or so close thereto so as to constitute an immediate hazard.’ LSA-R.S. 32:104, 122.” Daniels v. Allstate Ins. Co., 469 So.2d 352, 354 (La.App. 2d Cir.1985). More specifically, a left turning motorist within an intersection controlled by electric semaphore lights has the burden of proving that he was free from negligence, i.e., that he either faced an illumined green arrow or that he had preempted the intersection. In other words, such a motorist, when involved in an accident, is burdened with a presumption of liability for the accident. Daniels, supra; Bennett v. U.S. Fidelity and Guaranty Company, 373 So. 2d 1362 (La.App. 1st Cir.), writ denied, 376 So.2d 1269 (La.1979).
The testimony reveals conflicting evidence as to which driver had the right of way upon entering the intersection. The testimony also reveals that the traffic signals at the intersection were not malfunctioning. Notwithstanding conflicting evidence concerning which vehicle had the green light, the plaintiff contends that the fact that the point of impact occurred in the far right lane of Florida Blvd. is sufficient evidence to conclude that Marta Bus-tamante’s vehicle had preempted the intersection. We do not agree.
The evidence shows that the accident occurred on a bright sunny morning and that there existed no obstructions to prevent a clear view of the intersection. Furthermore, both the plaintiff and Marta Busta-mante testified that they did not pay attention to oncoming traffic in the eastbound lanes of Florida Blvd. once the left turn onto North Foster had begun. This is corroborated by the fact that the Bustamante vehicle took no evasive action to prevent the collision. Mr. Price testified that he saw the Bustamante vehicle turn in front of him and that he attempted to stop and swerved his vehicle to the right in order to go around the Bustamante vehicle.[3] The mere fact that the accident occurred in the far right lane of Florida Blvd. does not in itself establish preemption of the intersection when the point of impact is determined by evasive action which the oncoming motorist was forced to take when faced with a sudden emergency. Bankston v. Bueche, 206 So.2d 532 (La.App. 1st Cir.1968).
The finding of whether a left turning motorist entered an intersection under the green arrow or preempted the intersection is a question of fact to be determined by the jury. In the process of arriving at its findings of fact, it is within the purview of the jury to determine the credibility of witnesses and make reasonable inferences of fact. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Anderson v. Rabb, 484 So.2d 196 (La.App. 1st Cir.), writ denied, 489 So.2d 248 (La.1986). Furthermore, where evidence is conflicting, the court should not disturb the fact finder’s reasonable evaluation of one set of witnesses as credible and its consequent rejection of testimony of the opposing set of witnesses, nor should the court disturb the jury’s reasonable factual inferences drawn from the testimony found by it to be credible, even though the appellate court may feel that its own evaluation and inferences are as reasonable. Canter, supra, Garrison v. City of Berwick, 417 So.2d 48 (La.App. 1st Cir.1982). Herein, the jury found that Marta Bustamante was 100% at fault for the accident. For the reasons stated we are unable to conclude that this finding of fact is clearly wrong based upon the record presented. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Before addressing the plaintiff’s remaining contentions, we will review the argument set forth by Champion. In its brief to the court Champion stated that the trial court judgment is unclear as to whether Champion, in its capacity of U/M carrier, is liable to Ana Bustamante for any amounts over the limits of its liability policy. The trial court without assigning rea *229 sons dismissed Champion in its capacity of U/M carrier and awarded the plaintiff damages in the amount of $5,000.00 against Champion in its capacity as liability carrier. We find no ambiguity in the trial court judgment. The dismissal of Champion in its capacity of U/M carrier is supported by the language contained in Champion’s U/M policy and the jurisprudence interpreting such language. Champion’s U/M policy specifically states that “ ‘uninsured motor vehicle ’ does not include any vehicle: ... Owned by or furnished or available for the regular use of you or any family member.’’ The supreme court, interpreting similar policy language, concluded that a guest passenger is not entitled to recover under both the liability and U/M coverages of his host driver’s insurance policy when the negligence of the host driver caused the accident, and the insurance policy denies U/M coverage under such circumstances.[4] Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216 (La.1981).
The liability insurance policy issued by Champion contained policy limits of $10,-000.00. Prior to trial, Champion tendered $5,000.00, which was accepted by plaintiff in partial settlement of her claim. There remains only $5,000.00 of the policy limits available to plaintiff under the liability portion of the Champion policy. We have affirmed those portions of the trial court judgment finding Marta Bustamante 100% at fault and dismissing plaintiff’s claim against Champion under the uninsured motorist portion of its policy. Therefore, as the liability limits of the Champion policy have been exhausted, the issue of quantum is moot and need not be addressed.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects. All costs of this appeal are to be borne by the plaintiff.
AFFIRMED.

. The liability policy issued to Marta Busta-mante by Champion only contained policy limits of $10,000.00, of which $5,000.00 had been previously tendered and accepted by Ana Busta-mante in partial settlement of her claim.

. The investigating officer estimated that the Miller-Terrell dealership was approximately 300 to 400 feet from the intersection.

. Mr. Price stated that he swerved to the right because he thought the Bustamante vehicle would try to stop and also because he would have been driving into traffic in the westbound lanes of Florida Blvd. if he had swerved to the left.

. The court in Nall found that an insurance policy which denies U/M coverage when the host driver is at fault is not in derogation of the mandatory requirements set forth in the uninsured motorist statute. LSA-R.S. 22:1406.