702 So.2d 709 (1997)
Ethel MANUEL, Plaintiff-Appellee,
v.
CITY OF JEANERETTE, et al., Defendants-Appellants.
No. 95-1202.
Court of Appeal of Louisiana, Third Circuit.
September 10, 1997.
*711 Joseph Winand Thomas, New Orleans, for Ethel Manuel.
L. Lane Roy, Lafayette, for City of Jeanerette et al.
Before THIBODEAUX, SAUNDERS, WOODARD, PETERS and AMY, JJ.
THIBODEAUX, Judge.
Ethel Manuel filed suit against the City of Jeanerette for the wrongful death of her son, Wilbert Manuel, who hung himself while incarcerated in the Jeanerette City Jail. Following a bench trial, the City of Jeanerette was found to be negligent in the supervision of the incarcerated decedent. The court awarded $65,000.00 in wrongful death damages and $85,000.00 in survival damages. The defendant appeals from this judgment. For the following reasons, we affirm the finding of liability, but amend to award $25,000.00 in survival damages.

I.

ISSUES
We must determine if the trial court was manifestly erroneous in casting liability upon the City of Jeanerette and whether the damage awards were excessive.

II.

FACTS
On June 24, 1993, at approximately 10:40 p.m., Ethel Manuel called the Jeanerette Police Department to report a disturbance at her home involving her forty-one-year-old son, Wilbert Manuel. Officers Cy Landry and Donnie Frizzell of the Jeanerette Police Department responded to the plaintiff's call. The officers testified that Mr. Manuel was obviously intoxicated. When Mr. Manuel saw the police officers, he closed the door to the kitchen area so the officers could not reach him. When the officers went into the kitchen, Mr. Manuel jerked away and would not stand up. The officers ultimately handcuffed Mr. Manuel, frisked him for any weapons and escorted him to the patrol car. He was then transported to the Jeanerette City Jail and booked for disturbing the peace while intoxicated.
Officer Frizzell removed all items from Mr. Manuel's pockets and ordered him to take off his shoes and belt. This was a standard safety procedure so that Mr. Manuel could not injure himself or any other prisoner. Mr. Manuel was placed in the number two or "back" cell because Jesus Arriaga and Michael `Spiderman' Hurst were being held as prisoners in the number one or "front" cell. The dispatcher on duty at the time was Jimette Hebert, a woman of little training and only three months experience as a dispatcher.
Officer Landry returned to Mrs. Manuel's house to get a written statement and an affidavit. Mrs. Manuel signed an affidavit revealing that she wanted Wilbert arrested for disturbing the peace while intoxicated. Also, Landry obtained a written statement from Mrs. Manuel in which she stated: "Wilbert Jr. broke up some trophies that didn't belong to him and we couldn't stop him. He was so drunk that he used a lot of dirty words to me. He also wanted to fight with me." Landry returned to the police station to drop off this paperwork. However, he soon left because he received another call for assistance.
Later that night, Officer Clyde Phillips returned to the police station. While Phillips was visiting with Hebert, they heard the sound of a bunk being turned over in one of the cells. This was a common occurrence. The dispatcher did not check on the prisoners upon hearing the bunk turn over. Also, Jesus Arriaga, a prisoner in cell one, testified that he heard a gasping sound coming from the prisoner in cell two shortly after the bunk turned over and that he yelled for the *712 dispatcher to check the prisoner but she did not respond.
At some point during the morning of June 25th, Wilbert Manuel turned his unsecured bunk bed over and hung himself from a metal light fixture covering located in the ceiling. At 3:30 a.m., Alberta Gilliam relieved Hebert as dispatcher. The body of Wilbert Manuel was found at approximately 8:00 a.m. when Delcambre police officers arrived at the Jeanerette City Jail to retrieve Jesus Arriaga. While the autopsy of the body approximated the time of death between the hours of midnight to 6:00 a.m. the morning of June 25th, the coroner determined the time of death to be approximately 1:00 a.m.
The morning of June 25th, Chief Kahn went to Mrs. Manuel's house to inform her of Wilbert's death. When Kahn told Mrs. Manuel that Wilbert committed suicide, she revealed that Wilbert had told her a couple of weeks before that if he ever went back to jail, he would hang himself. However, Mrs. Manuel testified that she thought he was joking at the time.
The Jeanerette jail is a small facility and the dispatch area is separated from the prison cell area by a door. According to the Jeanerette Police Department Policy, this door is to remain open at all times. With the door open, the dispatcher can see directly into cell number one; however, the dispatcher cannot see cell number two from her desk. Both cells are equipped with a steel-framed bunk bed, a toilet, and sink facilities. At the time of this incident, only the toilet and sink were connected to the building structure.

III.

LAW AND DISCUSSION
The duty-risk negligence analysis considers five separate elements: (1) whether the defendants had a duty to conform their conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) whether there were actual damages (the damages element). Roberts v. Benoit, 605 So.2d 1032, 1041 (La.1991); Fowler v. Roberts, 556 So.2d 1, 4 (La.1989). A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
First, we consider whether a duty was owed to the prisoner in this case. Generally, a sheriff or police officer owes a general duty to a prisoner to save him from harm and the officer is liable for the prisoner's injury or death resulting from a violation of such a duty. Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (La.1970). Also, the supreme court "recognized a general rule that police officers are charged with a higher degree of care for a prisoner's safety and protection when the officers are aware that the prisoner is in an intoxicated state...." Griffis v. Travelers Insurance Company, 273 So.2d 523, 525 (La. 1973). However, the police officer must only do what is reasonable under the circumstances, and he is only liable for a certain category of risks. Id. at 526. The police officer is not the insurer of the safety of the prisoner because that prisoner is intoxicated. Id.
In the present case, the trial judge was manifestly erroneous in finding no heightened duty was required by the police officers because this decision was not reasonably supported by the record. Both Officers Frizzell and Landry testified that Wilbert Manuel was intoxicated at the time of his arrest. Also, Mr. Manuel had a blood alcohol level of 0.128 at his time of death which means it was at least this, if not more, at the time of his arrest. Mr. Manuel's actions serve as further proof that he was highly and uncontrollably intoxicated at the time of arrest. Mr. Manuel broke trophies at his mother's home, used foul and violent language, and fought with his mother and sister. Under these circumstances, the officers and *713 the City of Jeanerette owed a heightened duty to Mr. Manuel.
Second, we consider whether the defendant breached the duty owed to the prisoner to protect him from harm. The trial court found that a duty was breached. This decision was reasonably based on the record and was not manifestly erroneous. The Jeanerette Police Department breached the duty owed to the prisoner by not having a specific policy or rule regarding regular checks on the prisoners. Chief Kahn testified that the dispatcher was supposed to use her common sense in determining whether or when to check on the prisoners. However, the dispatcher had virtually no training prior to starting her job and had only three months experience as a dispatcher at the time this incident occurred. Also, both prisoners in cell one testified that Mr. Manuel called for help a few times and the dispatcher did not respond. When the dispatcher heard a bunk turning over in the cell area she did not investigate the source of the noise or check the prisoners. Jesus Arriaga testified that, approximately five to ten minutes after the bunk turned over, he heard Mr. Manuel choking and gurgling. Mr. Arriaga testified that he could not be sure of the time but he believed it to be around midnight. The trial judge's observation that "Jimette Hebert's failure to provide adequate, and indeed any, observation of the deceased Wilbert Manuel while he was in custody of the Jeanerette Police Department, was a breach of the duty owed to the prisoner" has ample support in the record and is reasonably based.
It is obvious from the Jeanerette Police Department's remedial actions that there were deficiencies in their policies for checking on prisoners.[1] Arthur Kahn testified that, after Mr. Manuel died, the Jeanerette Police Department instituted a direct time check of prisoners and the shift commanders double check the welfare of the prisoners when they come into the police station. Also, Ms. Hebert testified that TV monitors were installed two weeks after Mr. Manuel's death, so that the dispatcher can see into both cells at all times.
Third, we consider whether the breach of duty was a cause-in-fact of the injuries suffered. The injuries that occurred were Mr. Manuel's suffering during the two to five minutes before he died and Mrs. Manuel's suffering at the loss of her son. Ms. Hebert, the dispatcher, breached her duty to protect the prisoner from harm by not checking on him once during the time he was in the cell. In order to determine whether the dispatcher's breach was a cause-in-fact of the injury, we must ask whether the prisoner would have been injured if the dispatcher had not breached her duty. In other words, if she had not breached her duty, if her actions demonstrated appropriate conforming conduct, would injury to Mr. Manuel have likely been prevented? If the dispatcher had checked on the prisoner when she heard the bunk turn over or when Jesus Arriaga told her the prisoner in cell two was gasping then, in all probability, the death of Mr. Manuel would not have occurred. Furthermore, the inadequate training of jail personnel, the inadequate safety procedures and the lack of any formal policy regarding security for prisoners all combined to cause the unfortunate harm to Mr. Manuel.
Fourth, we consider the legal cause issue in the duty-risk analysis. Legal cause is also known as the scope of liability or scope of protection element in the duty-risk analysis. We must ask whether the duty breached by the defendant was designed to protect the plaintiff against the particular harm the plaintiff suffered. In this case, the defendant violated its duty to protect the prisoner from harm; however, the narrower question vis-a-vis legal duty is whether the breach of the city's duty was designed to protect the prisoner from hanging himself in his jail cell. Prior to placing Mr. Manuel into the jail cell, the police officers removed Mr. Manuel's belt and shoes. Officer Landry testified that it was standard operating procedure to remove a prisoner's belt and shoes "so that they can't do anything harmful to themselves with their *714 shoelaces." Therefore, the fact that the officers removed the prisoner's belt and shoes for his own protection demonstrates that they anticipated the prisoner might hang himself.
The fifth element of the duty-risk analysis is whether there were actual damages. The trial court found that Mrs. Manuel suffered damages from the loss of society, love, affection, and consortium of Wilbert Manuel. Friends and relatives testified that Mrs. Manuel and her son had a very loving relationship. Linda Manuel and Wilbert Manuel both lived at home with their mother, Ethel Manuel. Linda testified that Wilbert helped their mother by doing chores around the house. Linda Manuel also testified that her mother was taking Wilbert's death very hard. Ethel Manuel testified that she and her son had a beautiful relationship and that sometimes she just sits and cries because he is gone. It is clear that Mrs. Manuel suffered damages from the loss of her son.
The trial court found that Mr. Manuel suffered damages for his physical and mental pain and suffering prior to his death. The doctor who did the autopsy, Dr. Emile Laga, testified that it took Mr. Manuel between two to five minutes to die of acute asphyxiation as a result of hanging.
The appellate court must give great deference to the trial court's apportionment of fault. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607 (La.1996). The trial court did not apportion any fault to Mrs. Manuel. This finding is reasonably supported by the record and is not manifestly erroneous. Mrs. Manuel testified that she believed her son was joking when he threatened to hang himself. She also stated that Mr. Manuel made this comment in relation to an entirely separate incident. Therefore, she was justified in not relating Mr. Manuel's comment concerning suicide.
Finally, we consider the amount of damages awarded. The trial court awarded Mrs. Manuel $65,000.00 in wrongful death damages for the loss of society, love, affection, and consortium of Wilbert Manuel. This award is reasonably supported by the testimony concerning Mrs. Manuel's close relationship with her son as detailed previously in this opinion and is not manifestly erroneous.
The trial court awarded $85,000.00 in survival damages to Mr. Manuel for the physical and mental pain and suffering prior to his death. According to Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), an appellate court should not disturb an award for general damages unless the trier of fact abused the much discretion accorded to it. In Reck v. Stevens, 373 So.2d 498 (La.1979), the court held that the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. The judge, we find, abused his discretion in awarding $85,000.00 in survival damages to Mr. Manuel for two to five minutes of suffering. According to Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), the appropriate award is the highest reasonable award the fact finder could have awarded had it not abused its discretion.
Our review of awards in cases in which the individual was alive for only a short period of time between the accident and his death establishes the highest possible award of survival damages for Wilbert Manuel, Jr., is $25,000.00.
In a mother's suit against the state and caseworker for the suicide of her 11-year-old child following his separation from her pursuant to an allegation of child abuse, an award of $25,000.00 for pain and suffering of the child prior to death was neither excessive nor inadequate; the child suffocated himself to death by hanging over a period of five to 40 minutes, having concluded that he and his mother had been permanently separated. Todd v. Dept. of Social Services, 96-535 (La. App. 5 Cir. 11/26/96), 685 So.2d 313 (La.App. 5 Cir.1996), writ granted, 96-3090 (La.2/21/97), 688 So.2d 534 (La.1997).
Our circuit has previously upheld an award of $25,000.00 for pain and suffering, even though the decedent may have remained conscious and suffering for as little as five to thirty minutes. Johnson v. Georgia Cas. & Sur. Co., 488 So.2d 1306 (La.App.1986), writ denied, 493 So.2d 1223 (La.1986).

*715 IV.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment in favor of the plaintiff, Ethel Manuel, and against the City of Jeanerette. We affirm the award of $65,000.00 in wrongful death damages to the plaintiff, Ethel Manuel. However, we amend the award for survival damages from $85,000.00 to $25,000.00, which is the highest reasonable award under these circumstances.
The City of Jeanerette shall pay all costs of these proceedings.
AMENDED AND, AS AMENDED, AFFIRMED.
SAUNDERS, J., dissents.
AMY, J., dissents and assigns reasons.
AMY, Judge, dissenting.
In the case before us, I find no indication that police officials were aware that Manuel was potentially suicidal which could have given rise to a heightened burden. In my opinion, the record evidences no breach of the basic duty of care owed to a detained individual.
Accordingly, I respectfully dissent.
NOTES
[1] We are aware that C.E. art. 407 would normally preclude admission of such remedial activity; however, no objection was made regarding the use of such evidence and it is properly in the record before us.