140 So.2d 702 (1962)
Horace MANUEL, Plaintiff and Appellant,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant and Appellee.
No. 551.
Court of Appeal of Louisiana, Third Circuit.
May 7, 1962.
Rehearing Denied May 24, 1962.
Nathan A. Cormie & Assoc., by Chris J. Roy, Lake Charles, for plaintiff-appellant.
Lewis & Lewis, by Seth Lewis, Jr., Opelousas, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
In this case Horace Manuel sued United States Fire Insurance Company, as liability insurer of the town of Mamou, for injuries caused by a city police officer's negligence *703 in slamming a jail cell door on the little finger of plaintiff's right hand. The defendant denied any actionable negligence on the part of the officer and, in the alternative, alleged contributory negligence by the plaintiff. Without assigning written reasons, the trial judge rejected plaintiff's demands. From said judgment plaintiff now prosecutes this appeal.
The facts show that the plaintiff, a white man who frequently overindulged in intoxicating liquor, received his pay check on the afternoon of Thursday, April 14, 1960 at Holly Beach, Louisiana, where he was working for a pipeline company. After cashing their pay checks, the plaintiff and several companions started drinking in Holly Beach and later drove to Lake Charles where they continued to drink. Plaintiff testified that later he went to Mamou for the avowed purpose of giving money to his estranged wife and children. He testified the last thing he could remember before the accident was that he was sitting in a cafe in Mamou drinking at about 2 o'clock a. m. on the morning of Friday, April 15.
The evidence is unclear as to plaintiff's further activities until about 5 o'clock p. m. on Friday, April 15 in the town of Mamou, he walked to the taxi cab of Mr. Isaac Fontenot and asked to be taken to the home of his wife. Mr. Fontenot testified that he drove to several incorrect addresses and then plaintiff refused either to leave the cab or pay his fare. Fontenot stated that plaintiff was drunk and he didn't know what to do with him so he drove to the home of Mr. Rene Fusilier, police officer of the town of Mamou, to ask for assistance. Mr. Fusilier ordered plaintiff to get out of the cab and pay his fare, which plaintiff did by taking from his pocket and handing to Mr. Fontenot the sum of 35¢, one quarter and two nickels, which was the correct fare.
The officer then placed plaintiff in a police car and took him to the jail. When they arrived at the jail, plaintiff walked without assistance into the jail and into an open cell. When the officer started to close the cell door, plaintiff cursed and resisted by placing his left hand on the sill of the door next to the lock. The officer testified that he removed plaintiff's left hand from the door sill and pushed on the door to shut it, but before it locked he realized there was some obstruction so he pulled the door open and found that the little finger of plaintiff's right hand had been caught and mashed between the door and the sill near the hinges. A written statement, given by the officer before trial, stated that plaintiff cried out as the door closed on his finger, but in his deposition the officer said this was incorrect and that actually plaintiff did not cry out until after the door was opened and he saw his bloody finger. This evidence is relevant to the issue of the extent of plaintiff's intoxication, but even if he expressed no pain as the door closed we do not believe this to be a conclusive showing that plaintiff was so apparently intoxicated he would not take some precaution for his own safety.
Officer Fusilier took plaintiff to the Savoy Hospital in Mamou where Dr. B. J. Manuel treated the badly crushed and bleeding finger. In describing plaintiff's condition, Dr. Manuel testified that he smelled of intoxicating liquor; that he apparently had been drinking "fairly heavy"; that he could stand up and could walk, but unsteadily; that he was in a fighting mood and at first resisted treatment but finally agreed to lay down on a table while the finger was treated and bandaged; that plaintiff did not complain of any pain in his finger but expressed great anger toward Mr. Fusilier and occasionally would rise up off the table and want to leave. Plaintiff was released from the hospital the following day, but his finger subsequently developed gangrene and had to be amputated.
The first issue is whether plaintiff has proved any actionable negligence on the part of the police officer, Mr. Rene Fusilier. Plaintiff relies on the case of Kimbrell v. American Indemnity Co., 56 So.2d 880 (2nd Cir. La.App.1952) in which the city police found the plaintiff lying on the bank of a *704 river, in a drunken stupor. The police transported plaintiff to the city jail where he recovered a little from his stupified condition, but still was completely intoxicated and able to walk only with the officer's assistance. Plaintiff resisted the closing of the cell door, but the officer overcame his struggles and slammed and locked the door, catching and smashing the little finger of plaintiff's left hand. The opinion does not show whether plaintiff's finger was caught on the side of the door next to the lock where it would have been in full view of the officer, or whether it was caught on the side of the door next to the hinges, as in the instant case, where it would not have been in full view of the officer as the door was closed. The court held that the officer, knowing of plaintiff's highly intoxicated condition and knowing that he could not take care of himself, should have used a higher degree of care than would have been necessary or expected in the case of one who was entirely sober. The court found the officer negligent in not ascertaining, before closing the door, that no injury would result to the prisoner, and allowed plaintiff damages. (Contributory negligence was not discussed separately.)
We have no quarrel with the Kimbrell case, insofar as it finds actionable negligence on the part of the officer, but we believe the plaintiff in that case must have been more intoxicated and less able to take precautions for his own safety than the plaintiff in the instant case. In our opinion a correct statement of the general rule of law as to the duty owed to intoxicated persons in such cases is found in 65 C.J.S. Negligence § 143, p. 784 and in 38 Am.Jur. 684, Sec. 39, the latter of which reads in part as follows:
"In accord with the general principles stated in preceding sections, knowledge on the part of one person by whom a duty to exercise care for the safety of another is imposed, that the latter is so intoxicated as to be incapacitated for physical or mental effort, serves to demand an increase in the amount of precaution to be taken to prevent injury to him. A person who is known to be drunk, like those who are otherwise under a disability, is entitled, by reason of his incapacity to care for himself, to redoubled vigilance on the part of those who may owe him a duty to avoid an injury.Moreover, even when a person is known to be intoxicated, it may be assumed, if he does not appear to be physically incapacitated, that he will take some precautions to preserve himself from injury. It is neither axiomatic nor knowledge common to all that men when drinking are utterly reckless of their safety or insensible to their duty to protect themselves. It has been held that one conducting a boat livery violates no legal duty in renting a canoe to a person under the influence of intoxicating liquor, but not so intoxicated as to be incapable of protecting himself."
In the instant case, although plaintiff denied remembering anything about the accident or the events immediately preceding it, the evidence shows that he walked to the cab of Mr. Fontenot, in which he rode around for ten or fifteen minutes, and that on leaving the cab he paid the correct fare of 35¢. The evidence further shows that on being taken to the jail in a police car, he walked unassisted from the police car into the jail cell. It was only when the officer started to close the cell door that plaintiff began to curse and struggle and placed his left hand on the door sill next to the lock. The officer removed his hand and pushed plaintiff away from the door. Under these circumstances it is our opinion that plaintiff was not so apparently physically incapacitated that the officer could not assume he would take some precautions to preserve himself from injury and that he would not leave the little finger of his right hand on the door next to the hinges as it was closed. The evidence is clear that the officer did not see the smashed finger in a position of danger before closing the door.
*705 Although there is some dispute about it, it is our opinion the evidence shows that the door was covered with a sheet of solid steel so as to prevent the officer from seeing through it as the door shut, which means that he could not have seen plaintiff's little finger in a position of danger even if he had looked.
We do not find our conclusion in conflict with the two cases cited in the Kimbrell case, supra. The first cited case is Horsthemke v. New Orleans Railway & Light Co., 146 La. 931, 84 So. 210 in which the plaintiff, while intoxicated, was ruthlessly and without justification shoved by the conductor from a moving streetcar. Clearly the conductor there did not use reasonable care toward an intoxicated person and actually was guilty of willful negligence. The other cited case is Gouzien v. Feraci, 2 La. App. 115 (Orleans App.1925) in which the plaintiff, an intoxicated pedestrian crossing a street, was struck by defendant's automobile. In allowing recovery, the court found that plaintiff actually was not intoxicated to the extent of being physically incapacitated and furthermore that in any event, the defendant saw or should have seen the plaintiff in the street in time to stop, thereby requiring the application of the humanitarian doctrine of last clear chance. Clearly that case is distinguishable from the instant case, where plaintiff has not proved facts justifying recovery under the concept of last clear chance. Plaintiff has not even argued last clear chance.
A further reason for denying plaintiff's recovery in the instant case is that, even assuming actionable negligence on the part of the police officer, plaintiff was guilty of contributory negligence. As the court pointed out in the Kimbrell case, supra, voluntary intoxication does not relieve one from the effects of his own negligence. The rule is stated in 38 Am.Jur. 883, Sec. 203 as follows:
"Voluntary intoxication does not relieve one from contributory negligence, or serve to relax the requirement which is imposed upon a person to exercise due care for his own safety. Every person is bound to a duty of exercising his intelligence to discover and avoid dangers that may threaten him, and intoxication voluntarily produced can constitute no excuse for a failure fully to perform this obligation. One who has voluntarily disabled himself by reason of intoxication is held to the same degree of care and prudence in the interest of his own safety that is required of a sober person. A person threatened with a peril caused by the negligence of another is bound to exercise his intelligence and activity in full measure to avoid injury therefrom, and if it appears that from voluntary drunkenness he has deprived himself of the capacity so to do and as a result has suffered an injury, he will be denied legal redress therefor on the ground of contributory negligence. Thus, where one, by reason of his own voluntary intoxication, exposes himself to danger, and receives injuries which he could, and by the exercise of ordinary prudence would, have avoided if sober, he is guilty of contributory negligence and cannot recover for such injuries. However, the plaintiff's voluntary intoxication is not negligence per se, and will not of itself prevent a recovery; hence, it is error to enter a nonsuit or give a binding instruction to find for the defendant for the reason merely that the plaintiff was intoxicated. Intoxication defeats a recovery by the plaintiff for negligence only in so far as it affects the care which he takes for his own safety. Thus, evidence of plaintiff's intoxication is admissible, not as establishing contributory negligence in itself unless it shows that the drunkenness was in such degree as to cause loss of control of the muscles and senses, but as a circumstance to be weighed by the jury in their determination of the issue *706 whether or not the plaintiff exercised ordinary care for his own safety."
Although plaintiff had voluntarily disabled himself to an extent by intoxication, he is held to the same degree of care for his own safety that is required of a sober person. Clearly, a sober person would be required to submit to arrest and incarceration and to keep his finger out of the cell door as it was closed, particularly when the finger was in a position where it could not be seen by the police officer as he pushed the door shut.
For the reasons assigned the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.