605 So.2d 640 (1992)
Larry W. HENSHAW
v.
AUDUBON PARK COMMISSION, ABC Insurance Company, et al.
No. 91-CA-1933.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1992.
Writ Denied November 20, 1992.
James J. Morse, New Orleans, for defendant-appellee.
*641 Frederick J. King, Jr., John C. O'Brien, William G. Tabb, III, Metairie, for plaintiffappellant.
Before BYRNES, CIACCIO and WALTZER, JJ.
BYRNES, Judge.
Larry W. Henshaw appeals a judgment denying his claim for personal injury damages. We affirm.
On January 18, 1985, plaintiff-appellant, Larry W. Henshaw, and two friends, Juan Urrea and Ford Leary, went to Audubon Park in the early morning and climbed high into a large oak tree. Their loud voices up in the tree were upsetting some of the animals in the zoo. Sergeant Nelson Lacy, an Audubon Park security policeman, ordered Mr. Henshaw and his companions down out of the tree. Sergeant Lacy was in the company of James Logan, a groundskeeper, and David Anderson the General Curator of the zoo. At this point Mr. Henshaw fell from the tree approximately twenty-five to forty-five feet to the ground. He complains that he sustained permanent brain damage and other disabling injuries when his head hit the root system at the base of the tree. He has no memory of the incident. As a result of those injuries, Mr. Henshaw filed suit against the Audubon Park Commission and ABC Insurance Company.
In his written reasons, the trial judge concluded that there was "no duty owed by Audubon Park Commission to have prevented the plaintiff and his friends from climbing the oak tree. Thus, the Court finds that the oak tree did not pose an unreasonable risk of harm. Hence, there is no strict liability imposed upon the defendant under the facts and circumstances of this case. Additionally, the Court finds that there is no liability under La.C.C. 2315 negligence." We agree. Roberts v. Allstate Ins. Co., 437 So.2d 326 (La.App. 2nd Cir.1983).
We further agree with the trial judge where he quoted from Entrevia v. Hood, 427 So.2d 1146 (La.1983) that we"... must consider the moral, social and economic values as well as the ideal of justice in reaching an intelligent and responsible decision... [T]he activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations." See also: Stanley v. Missouri Pacific Railroad Co., 179 So.2d 490 (La. App. 3rd Cir.1965).
Based upon this philosophy it is clear that we would be doing violence to the environment and to society if we were to hold that the mere ownership of a tree created per se a hazardous condition or unreasonable risk such as would give rise to strict liability. The benefits of trees to society far outweigh any attendant risks and any decision that would discourage the ownership of trees would be contrary to the public good.
"If the custodian of the thing is presumed to have knowledge of its condition before plaintiff's injury, would he then have been acting reasonably by maintaining it and exposing others to it?" Entrevia v. Hood, 427 So.2d 1146 (La.1983). In the case of the Audubon Park Commission maintaining this tree, the answer to this question would be a resounding yes.
Plaintiff argued that Audubon Park had a rule against climbing trees, but it was not posted. Surely if there were only one sign posted at the front of the park near St. Charles Avenue, plaintiff would argue that it was not reasonably calculated to give him notice when he entered on Magazine Street at the rear of the park, not to mention all of the other countless streets and paths providing ingress into the park. Should the Park post the rule prominently upon each tree? Would the public stand for a park defaced by signs on every tree to warn of a danger of which everyone is already aware? The mere existence of the rule did not create a duty to plaintiff to post it.
Plaintiff contends that Audubon Park's unposted rule against tree climbing was *642 enacted in recognition of the potential danger to persons such as plaintiff, but offered no proof in support of that assertion. It seems just as likely that the rule was enacted to give park personnel the authority to prevent damage to the trees, not to climbers.
Where the risk is obvious, universally known, easily avoidable, and a part of the natural order and one's quotidian surroundings we find that there is no duty to warn, no duty to prevent, no unreasonable risk or hazard and no liability under LSA-C.C. Art. 2317 or 2315. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La. 1976).
Plaintiff argued that Audubon Park through its employees knew that plaintiff was drunk and therefore he was owed a greater duty of care than would be normal under the circumstances. Plaintiff then contends that Audubon Park breached this greater duty to plaintiff when its employeesecurity guard peremptorily ordered plaintiff and his friends down out of the tree. Plaintiff asserts that the volume, tone and content of the command as well as the appearance of the security guard's uniform startled him and/or panicked him and/or made him nervous and/or anxious causing him to act too quickly and/or without sufficient caution etc., resulting in his fall and injuries.
Plaintiff relies upon Manuel v. United States Fire Insurance Company, 140 So.2d 702 (La.App. 3rd Cir.1962) by quoting the following:
In accord with the general principle stated in the preceding sections, knowledge on the part of one person by whom a duty to exercise care for the safety of another is imposed, that the latter is so intoxicated as to be incapacitated for physical or mental effort, serves to demand an increase in the amount of precaution to be taken to prevent injury to him.
However, by the mere fact that the plaintiff and his friends had succeeded in climbing as high in the tree as they in fact did is sufficient basis in itself for the Audubon Park employees (and the trier of fact) to have reasonably assumed that plaintiff was not incapacitated to the extreme degree called for by the court in the Manuel case.
In fact, in the Manuel case the court actually held against the intoxicated plaintiff stating that "... even when a person is known to be intoxicated, it may be assumed, if he does not appear to be physically incapacitated, that he will take some precautions to preserve himself from injury. It is neither axiomatic nor knowledge common to all that men when drinking are utterly reckless of their safety or insensible to their duty to protect themselves."
The Manuel case was decided thirty years ago. Since that time although our society has developed increased compassion for the tragic human frailty involved in alcohol and substance abuse, it has correspondingly developed an increased intolerance for the dangers and risks arising out of such abuse, no better example of which can be seen than in the increasingly draconian laws concerning DWI offenses. "Rewarding" intoxication by allowing the inebriated to demand a greater standard of care and potential for liability from innocent third parties who did not contribute to their condition is clearly contrary to current public policy.
Moreover, the trial judge found that plaintiff, although he had been drinking, was not intoxicated. We cannot say that the trial judge was manifestly erroneous in making this finding since his reasons for judgment are based upon adequate references to testimony in the record. Rosell v. ESCO, 549 So.2d 840 (La.1989). We particularly agree with the reference by the lower court to testimony by one of plaintiff's friends that "they would not have climbed twenty-five to forty feet in the tree had they been intoxicated."
The Audubon Park employees were not unreasonable in assuming that plaintiff was suffering from no physical impairment as a result of intoxication sufficient to constitute an abnormal risk in climbing down in view of the dexterity plaintiff had already displayed by climbing twenty-five to forty-five feet up into the tree.
*643 Plaintiff suggests that the Audubon Park employees were remiss in not telling plaintiff to use caution when ordering him to descend from the tree. We hardly see how a warning that "if you fall you might get hurt," which is so obvious and universally known, would have supplied plaintiff with any useful information he did not already possess. Above a certain age one should not have to be told not to leap out of windows etc., and there is no duty owed to inform plaintiff of what he already knew.
The trial court was also reasonable in finding, in effect, that the Audubon Park employees breached no duty to the plaintiff by the manner in which they ordered him down from the tree. A soft, gentle request to climb down addressed to three noisy men twenty-five to forty-five feet up in a tree undoubtedly would have gone unheard and unheeded.
For the foregoing reasons we affirm.
AFFIRMED.