Wesley M. BROWN, et al.

v.

UNITED STATES of America, et al.

Civ. A. No. 92–2219.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 17, 1994.

Glenn G. Cortello, Field V. Gremillion, III, Alexandria, LA, for plaintiffs.

Carl E. Perry, U.S. Attorney's Office, Lafayette, LA, Herbert T. Nesom, Oakdale, LA, for defendants.

## OPINION

NAUMAN S. SCOTT, District Judge.

### I. INTRODUCTION.

Plaintiff, Wesley M. Brown, filed suit in this court against the United States of America (United States) and the City of Oakdale (Oakdale) seeking legal relief as a result of a fall which occurred on the divider between the sidewalk and the street in front of the United States Post Office in Oakdale, Louisiana (the "Post Office"). With the consent of the court, both parties have agreed that this matter would be submitted on briefs in lieu of a trial. Having considered the pleadings, exhibits, motions, and record as a whole, the court now issues its findings of fact and conclusions of law in accordance with Fed. R.Civ.P. 52(a).

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as conclusions of law. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as findings of fact.

### II. FINDINGS OF FACT.

1. On November 10, 1991, plaintiff Brown drove to the Post Office to get his mail. Almost every day since 1974, plaintiff drove to the Post Office to receive his mail and, because he had parked in the same area on many occasions, plaintiff was generally familiar with the Post Office grounds.

2. While crossing the divider between the curb and the sidewalk, plaintiff caught his partially amputated right foot[1] on the exposed root of a live oak tree and fell. Plaintiff was following his normal routine and was aware of the existence of tree roots on the divider, which had been exposed because of recent rainfall and were raised higher than normal.[2] The land between the curb and the sidewalk is owned by the City of Oakdale but is under the care, custody and control of the United States.

3. With the assistance of others, plaintiff was helped up and sat in his car for a few minutes. Under his own power, plaintiff then entered the Post Office to pick up his mail and returned to his car. Plaintiff did not mention his fall to any employees of the United States Postal Service (Postal Service) or anyone else at the Post Office. Immediately after picking up his mail, plaintiff went home and then drove to Dr. Mowad's office.

4. Dr. Mowad administered three shots in plaintiff's right arm to relieve the pain caused by torn tendons in plaintiff's right elbow and a separated right shoulder.

5. Approximately three weeks prior to plaintiff's fall at the Post Office, plaintiff tripped on a vine and injured his right shoulder while hunting. As a result of that incident, plaintiff saw Dr. Mowad three or four times and received several shots for the pain in his right shoulder. Plaintiff fully recovered from his hunting injury prior to his fall at the Post Office.

6. As required by 28 U.S.C. § 2401 and 28 U.S.C. § 2675 as a prerequisite to filing suit in federal court under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., plaintiff filed an administrative claim with the Postal Service, which was denied on November 8, 1991. In accordance with 39 C.F.R. § 912.9(b), the plaintiff, by letter dated March 11, 1992, formally requested reconsideration of the denial. Although resolution of that reconsideration was not complete when

---

1. As a result of a childhood accident in 1926, where plaintiff caught his right foot in a sugar cane thresher, Brown had his right foot partially amputated from the joint in his instep.

2. When asked in his deposition if he knew whether the tree roots were exposed when he fell, plaintiff said that he "knew that there was [sic] roots there, but ... didn't know that there was that one that high." Brown Tr., at 64.

plaintiff filed this federal action, in a Memorandum Ruling dated April 20, 1993, this court ruled that plaintiff had not constructively abandoned his request for reconsideration and declined to dismiss this action for lack of jurisdiction.

## III. CONCLUSIONS OF LAW.

### A. Liability of the United States.

1. Pursuant to 28 U.S.C. § 1346(b), any liability of the United States for personal injury is determined on the basis of "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the alleged negligent acts in this case occurred in Louisiana, the law of Louisiana applies.

■ 2. In order to determine whether liability exists for negligence under the facts of a particular case, Louisiana courts employ a duty/risk analysis. Under this analysis, plaintiff must prove that: (1) the conduct of the defendant was a cause-in-fact of plaintiff's injury; (2) a duty was imposed by law on the defendant to protect plaintiff from the injury arising under the circumstances of the case; (3) the defendant violated the duty with respect to plaintiff—i.e., the defendant acted unreasonably; and (4) damages were sustained. *Mart v. Hill,* 505 So.2d 1120, 1122 (La.1987); *Hill v. Lundin & Assocs., Inc.,* 260 La. 542, 256 So.2d 620, 622 (1972).

3. In *Waters v. McDaniel Recreation Center, Inc.,* 521 So.2d 788, 792 (La.App. 2d Cir.1988), the court specified the duties [3] owed by an owner or occupier of land to an invitee:

> The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of rea-

sonable prior discovery of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger.

Stated differently, "a landowner [or occupier] owes a plaintiff a duty to discover any unreasonably dangerous conditions and to either correct the condition or warn of its existence." *Socorro v. City of New Orleans,* 579 So.2d 931, 939 (La.1991) (citing *Shelton v. Aetna Casualty & Sur. Co.,* 334 So.2d 406, 410 (La.1976)).

4. In determining the existence of a legal duty, however, Louisiana courts have made clear that "[w]here the risk is obvious, universally known, easily avoidable, and a part of the natural order and one's quotidian surroundings," there is no duty to warn and no duty to correct a potentially dangerous condition. *Henshaw v. Audubon Park Comm'n, ABC,* 605 So.2d 640, 642 (La.App. 4 Cir. 1992); *see also Shelton,* 334 So.2d at 410.

■ In the instant case, the accident occurred when plaintiff tripped on an exposed tree root in close proximity to a live oak tree. An exposed tree root, especially one that is raised three to four inches above the ground, is an obvious, universally known and easily avoidable risk which cannot be construed as a "hidden danger[ ] in the nature of [a] trap[ ] or pitfall[ ]." *Waters,* 528 So.2d at 792. On the contrary, a tree root is an ordinary and necessary part of our natural order and quotidian surroundings which creates a risk that is easily observed and appreciated in the exercise of reasonable care. Indeed, when plaintiff tripped on the exposed tree root on his way to the Post Office on November 10, 1991, the root was in plain sight and, with the exercise of reasonable caution, could have been avoided with little effort. Even plaintiff concedes that, because he picked up his mail at the Post Office almost every day since 1974, he was generally familiar with the grounds at the Post Office and was **specifically aware of the existence of tree roots** on the divider.

---

3. Because the issue of legal duty is a threshold element in any tort action and is best discussed in this instance before issues of causation, we begin under the second prong of Louisiana's duty/risk analysis.

We find, therefore, that although the exposed tree root was a potentially dangerous condition, no legal duty can be imposed because that condition was obvious, easily avoidable, universally known, and, in fact, known to the invitee at the time of the accident. *See Shaw v. Fidelity & Cas. Ins. Co.*, 582 So.2d 919, 923 (La.App. 2 Cir.1991); *cf. Alexander v. City of Lafayette*, 584 So.2d 327, 329 (La.App. 3 Cir.1991) (holding that an exposed tree root alone does not present an unreasonable risk of harm under art. 2317). To impose a legal duty on landowners and occupiers to warn of the dangers of exposed tree roots or cover exposed tree roots would put a severe burden on virtually all landowners to remedy a risk that does not merit such a burden.[4]

5. As an alternative basis for determining whether a legal duty should be imposed, courts consider social policy by asking whether "the probability and magnitude of harm outweigh[s] the social utility of the thing." *Bealer v. National Tea Co.*, 597 So.2d 1242, 1244 (La.App. 3 Cir.1992); *see also Landry v. State*, 495 So.2d 1284, 1288 (La.1986) (balancing the intended benefit of the thing with its potential for harm and the cost of prevention).

■ As the court found in *Henshaw*, "[t]he benefits of trees to society far outweigh any attendant risks and any decision that would discourage the ownership of trees would be contrary to the public good." 605 So.2d at 641. The United States correctly asserts that the offending live oaks "add to the character and beauty of the Oakdale Post Office and the downtown Oakdale area" and create low-magnitude risks that are obvious to any attentive pedestrian. Def.'s Mem. in Supp. of Mot. for Summ. J., at 13–14. Any ruling that expands the duties owed by owners of trees with exposed roots would impose severe remedial costs on municipalities and park authorities and would discourage ownership of trees, which are a necessary and integral part of our natural and aesthetic environment. Because the social utility of trees clearly outweighs the magnitude of any potential harm, we decline to expand the duties of landowners in the context of exposed tree roots on public policy grounds.[5]

## B. Liability of the City of Oakdale.

6. Although sovereign immunity is no longer a defense for contract or tort actions against the State and its political subdivisions, see La. Const., art. 12, § 10 (1974), Louisiana courts impose liability upon the State only where the State's duty flows directly to the individual and not when the duty owed is to the general public. Thus, Louisiana courts have imposed tort liability for harm caused by " 'governmental activities which have displaced or supplemented traditionally private enterprises,' " but have declined to impose tort liability for harms caused by governmental services " 'to protect the public generally from external hazards and particularly to control the activities of criminal wrongdoers.' " *Dufrene v. Guarino*, 343 So.2d 1097, 1099 (La.App. 4 Cir.1977) (quoting *Riss v. City of New York*, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968)). Public buildings, their surrounding lands, and highways, which are provided by government directly for use by individuals and give rise to individual duties, have uniformly been held to give rise to municipal liability under ordinary principles of tort law. *See id.*

7. For the reasons stated in our discussion of the liability of the United States, we find that, under ordinary principles of Louisiana tort law, although the exposed tree root was a potentially dangerous condition, no legal duty can be imposed on the City of Oakdale as a landowner. As discussed above, the exposed tree root was obvious, easily avoidable, universally known, and, in

---

4. In *Henshaw*, a case in which the court declined to impose a duty on the Audubon Park Commission to erect warnings on the danger of climbing trees, the court succinctly summarized the issue by rhetorically asking: "Would the public stand for a park defaced by signs on every tree to warn of a danger of which everyone is already aware?" 605 So.2d at 641.

5. Because we find that the United States owed no legal duty to warn or remedy the danger of the exposed tree root in this case, it is unnecessary to address issues of breach of duty, causation and damages in this Opinion and we decline to do so.

fact, known to the invitee at the time of the accident. *See Shaw*, 582 So.2d at 923.

8. In determining the tort liability of a municipality, additionally, there are statutory limitations which further limit municipal liability. La.Rev.Stat.Ann. § 9:2800, which limits the liability of public entities [6] that own or occupy land provides, in pertinent part:

A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

C. Constructive notice shall mean the existence of facts which infer actual knowledge.

\* \* \* \* \* \*

La.Rev.Stat.Ann. § 9:2800(A), (B) and (C) (West 1991) (emphasis added).

10. Thus, to impose liability on the City of Oakdale under La.Civ.Code art. 2317, we would have to find that: (1) the City of Oakdale had "actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence," and (2) the City of Oakdale "had a reasonable opportunity to remedy the defect and has failed to do so." La.Rev.Stat. § 9:2800(B) (West 1991).

■ Significantly, the plaintiff has failed to satisfy its burden of coming forward with any facts which would suggest that Oakdale officials knew or should have known of the exposed tree root prior to November 10, 1991. There had been no prior falls by pedestrians on exposed tree roots near the Post Office and there is no evidence of any prior complaints of a similar nature by Postal Service employees or patrons of the Post Office. Additionally, no facts have been brought to our attention which would suggest that Oakdale had a reasonable opportunity to cover or warn of the exposed tree root prior to November 10, 1991. The court finds, therefore, that no liability can be imposed against the City of Oakdale under La.Civ. code art. 2317 because Oakdale had no actual or constructive knowledge of the exposed tree root, nor did it have a reasonable opportunity to remedy the defect, prior to the accident.

## IV. CONCLUSION.

For all of the foregoing reasons, the court finds that a legal duty cannot be imposed on either the United States or the City of Oakdale to warn the plaintiff of the risk of exposed tree roots or to remedy the risk of exposed tree roots. Additionally, the court finds that no liability can be imposed against the City of Oakdale under La.Civ.Code art. 2317. Accordingly, plaintiff's claims for legal relief against the United States and the City of Oakdale cannot prevail under applicable principles of Louisiana law.

Defendant is instructed to prepare a Judgment in conformity with this Opinion and submit it to this court for execution after it has been approved as to form and content evidenced by the signatures of the attorneys of record.

---

6. Those public entities include "the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions." La.Rev.Stat.Ann. § 9:2800(E) (West 1991).